FILED

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

2017 MAY 22 PM 12: 17

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

| | |
|---|---|
| ESTATE OF IBRAGIM TODASHEV, by HASSAN SHIBLY, as Personal Representative of the ESTATE OF IBRAGIM TODASHEV, and for the Survivors, ABDULBAKI TODASHEVE, Father, and ZULLA TODASHEVA, Mother.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA and AARON McFARLANE, CHRISTOPHER JOHN SAVARD, CURTIS CINELLI, and JOEL GAGNE, individually,<br><br>Defendants. | CIVIL ACTION<br><br>Case No. 6:17-cv-919-ORL-41-DCI |

## COMPLAINT FOR DAMAGES

Plaintiff is the ESTATE OF IBRAGIM TODASHEV, by Personal Representative, HASSAN SHIBLY. Decedent was a person thought to have knowledge relating to a criminal case being investigated by the Federal Bureau of Investigation (FBI). Defendants are liable for negligence and intentional acts relating to the shooting death of Mr. Todashev. Plaintiff alleges:

### Jurisdiction

1. This Court has jurisdiction under 28 U.S.C. §§1331 and 1346 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1972) and arises under 28 U.S.C. §2671, et seq. and 42 U.S.C. 1983.

2. Plaintiff timely filed a claim under the Federal Tort Claims Act (Exhibit A), which claim has not been responded to and is thus deemed denied.

3. All acts precedent to this suit have been performed or waived.

## Parties

4. Plaintiff HASSAN SHIBLY is the Personal Representative for the ESTATE OF IBRAGIM TODASHEV, and his Survivors ABDULBAKI TODASHEVE, Father, and ZULLA TODASHEVA, Mother.

5. At all times material hereto, Defendant AARON McFARLANE (McFarlane) was an agent of the Federal Bureau of Investigation (FBI acting within the scope of his employment. He is sued in his individual capacity

6. At all times material hereto, Defendant CHRISTOPHER JOHN SAVARD (Savard) was an agent of the Federal Bureau of Investigation (FBI) acting within the scope of his employment. He is sued in his individual capacity

7. At all times material hereto, Defendants CURTIS CINELLI (Cinelli) and JOEL GAGNE (Gagne) were Massachusetts State Troopers acting within the scope of their employment. They are sued in their individual capacity

8. Defendant UNITED STATES OF AMERICA (United States), is a proper defendant pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. and was at all times material hereto the employer of Aaron McFarlane.

## Common Allegations of Fact

9. On May 22, 2013, Aaron McFarlane ("McFarlane") unlawfully shot and killed Ibragim Todashev ("Todashev") at his home in Orlando, Florida.

10. McFarlane was a special agent of the FBI since 2008.

11. Prior to working for the FBI, McFarlane had a blemished career as a police officer for the Oakland Police Department in Oakland, California.

12. While an Oakland Police Officer, McFarlane was the subject of two police brutality lawsuits and four internal affairs investigations.

13. In 2003, McFarlane was a defense witness in *California v. Siapno*, also known as the infamous "Riders" case.

14. After McFarlane was accused of falsifying police reports, he invoked his Fifth Amendment privilege against self-incrimination.

15. In 2004, McFarlane retired from the Oakland Police Department, claiming disability and, thereupon, began receiving disability payments.

16. McFarlane was still receiving disability payments at the time he was hired by the FBI which continued through the time he killed Mr. Todashev.

17. Mr. Todashev was of interest to the FBI because he knew Tamerlan Tsarnaev who was believed be involved in the Boston Marathon bombings.

18. Starting on or about April 15, 2013, FBI agents followed, harassed, and repeatedly questioned Todashev regarding the bombings.

19. There was no reason to believe Mr. Todashev took part in the bombings but he and Tamerlan Tsarnaev both trained at the Wai Kru Gym in Boston.

20. On April 21, 2013, Todashev and his girlfriend, Tatyana Gruzdeva ("Gruzdeva"), were approached by six or seven plainclothes FBI agents at their apartment at 6022 Peregrine Avenue, Orlando, Florida.

21. Although the agents had no reason to believe Mr. Todashev had committed a crime, they ordered him to the ground at gunpoint and handcuffed him.

22. The agents unlawfully searched the apartment, questioned Todashev for four to five hours, and confiscated his phones, computers, and other property.

23. The agents unlawfully detained Todashev and took him to the Orlando Police Department ("OPD"), where agents continued to question him.

24. Todashev explained how he knew Tamerlan Tsarnaev and denounced the Boston Marathon Bombings as "horrible and unnecessary."

25. Savard is a member of the OPD and the Joint Terrorism Task Force ("JTT"). As a JTT member, Savard operates under FBI supervision as an FBI agent.

26. Todashev was cooperative and forthcoming with the FBI agents.

27. Todashev voluntarily appeared at the OPD April 22, 2013, for additional questioning by Savard though he was not required to do so.

28. In April 2013, FBI agents questioned Reniya Manukyan ("Manukyan"), Todashev's wife, from whom he has been separated since 2011.

29. FBI agents detained Manukyan in New York as she returned from visiting her family in Russia and questioned her for five hours.

30. The next day, FBI agents questioned Manukyan again, this time at her workplace in Atlanta, Georgia.

31. On the night of May 21, 2013, FBI agents again questioned Manukyan about a car she and Mr. Todashev owned and the Boston Bombing.

32. During the week of May 13, 2013, FBI agents questioned several of Todashev's friends, including Ashur Miraliev ("Miraliev").

33. An FBI agent who called himself Hanson questioned Miraliev on his views on politics, religion, and the Boston Bombings, as well as on what he believed Mr. Todashev's political and religious views were.

34. The agent then asked Miraliev to inform on activities at local mosques and restaurants that Todashev and his friends frequented.

35. When Miraliev declined, the agent told Miraliev he would intervene to make sure Miraliev's asylum application would be denied.

36. On May 15, 2013, Savard again called Todashev to the OPD for questioning. Once again, Todashev voluntarily went to the OPD.

37. Todashev's girlfriend Gruzdeva accompanied Todashev to the OPD.

38. As Gruzdeva waited for Todashev to complete the interview, she was approached by four agents.

39. Agents put her in a room, searched her handbag, and requested that she keep them informed of Todashev's whereabouts and actions. Gruzdeva declined.

40. Immediately thereafter, one of the agents picked up the phone, dialed a number, and stated "we have an illegal girl.".

41. Gruzdeva was handcuffed and taken to Orange County jail.

42. Todashev exited the interview with Savard and was unable to find Gruzdeva.

43. Todashev was never able to get Gruzdeva out of jail.

44. On May 21, 2013, Savard contacted Todashev once again to arrange what Savard referred to as "one last meeting."

45. The meeting was with Savard, McFarlane and Massachusetts State Troopers Curtis Cinelli ("Cinelli"), and Joel Gagne ("Gagne").

46. Cinelli, and Gagne were investigating Waltham, Massachusetts triple murder in September 2011 they believed was linked to Tamerlan Tsarnaev.

47. Agents said very little preparation went into the interrogation despite the fact that the topic of interrogation was supposedly a triple murder.

48. Todashev was worried about the agents' record of duplicity and bad faith.

49. Because Todashev deemed the agents untrustworthy and because they refused to meet in a public place, the interview was set in Todashev's home.

50. Todashev brought his friend Tamarov to the interview to act as a witness.

51.  The interview began at approximately 7:00 p.m. on May 21, 2013.

52. Despite the fact that they understood Tamarov was to be a witness, the agents made Taramov stay outside the apartment with Savard.

53. Taramov and Savard were outside together for approximately four hours.

54. Without explanation, Savard, told Taramov to leave the premises around 11:00 p.m. and wait for Todashev at a local hookah bar.

55. Within the hour, Mr. Todashev would be dead.

56. Meanwhile, McFarlane, Gagne, and Cinelli had been interrogating Todashev inside the apartment since 7:00 p.m.

57. According to the agents, at around 10:30 p.m., Gagne went outside to call the district attorney and remained there with Savard, leaving McFarlane and Cinelli alone in the apartment with Todashev.

58. Around midnight, Todashev decided to leave the apartment.

59. As Todashev tried to leave, McFarlane shot him seven times.

60. Todashev was unarmed with any sort of weapon.

61. Todashev did not pose a threat of serious bodily harm to any person.

62. FBI has refused to provide any evidence in support of a justification for MacFarlane's killing Todashev.

63. The actions of the law enforcement officers were designed to escalate conflict and attempt to justify the wrongful use of force.

64. The agents designed to increase pressure against Todashev from April 15, 2013, through his final hours on May 22, 2013, without just cause, including repeated and unnecessary arrests, searches, and lengthy interrogations.

65. The agents used intimidation, deceit, and other improper means against Todashev, his friends, and family—including interference with the immigration status of Todashev's friends and family—to coerce Todashev into falsely confessing to crimes he did not commit.

66. The agents arranged to interview Todashev on the night of May 21, 2013, in a secluded location, making sure there were no witnesses at the critical time.

67. The agents designed to send away Tamarov—the one witness who might have testified to the events—shortly before MacFarlane killed Todashev.

68. The agents orchestrated events to try to provoke Todashev into doing something that would justify an arrest or use of deadly force.

69. Despite the use of psychological techniques to escalate a confrontation with Todashev, Todashev never availed himself of a weapon but tried to leave.

70. Although Savard and Massachusetts police had the ability to intervene to prevent the plan to violate Todashev's rights, they failed to do so.

71. After Todashev was dead, the Agents tried to arrange the apartment to make it look like Todashev had picked up a metal tube to use as a weapon but failed to get Todashev's fingerprints on the tube.

72. The FBI was aware of Aaron McFarlane's history of misconduct when they hired him and was negligent in hiring and supervising MacFarlane.

73. The FBI hired McFarlane because of his known unscrupulous methods and willingness to work outside the law to achieve FBI goals.

74. The FBI failed to intervene in the campaign of harassment that McFarlane and Savard and others waged against Todashev, his friends, and family that ultimately resulted in Todashev's wrongful death.

75. The foregoing wrongful acts were the actual and proximate cause of Todashev's death – and resulting harm to the Estate and Survivors.

76. Finally, the FBI was negligent in its investigation of Todashev's killing. MacFarlane was never interviewed by a disinterested investigator.

77. Upon information and belief, at various dates and times between the time MacFarlane killed Todashev and the present, McFarlane, Cinelli, Gagne, Savard, and other agents/employees of the FBI and the Department of Justice, conspired with each other and engaged in numerous acts to keep secret information and evidence probative of McFarlane's tortious conduct.

78. The nature and extent of Todashev's injury is death by at least seven gunshot wounds. Todashev's death on May 22, 2013, was the result of excessive force by FBI agents and negligent hiring/supervision by the FBI—all of which resulted in Todashev's wrongful death.

79. The injuries to Todashev are consistent with his being shot as he tried to leave the apartment and inconsistent with the Defendants versions of events.

80. As a result of the Defendants' wrongful acts, the Estate of Ibragim Todashev and his survivors have suffered emotional distress, pecuniary loss, comfort, companionship, services, advice, care, and net accumulations, of their Child, and will suffer such losses in the future.

## Causes of Action

### I. Wrongful Death under the Federal Tort Claims Act (United States)

81. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

82. Defendant United States is liable to Plaintiff because officers, agents, and employees of the Federal Bureau of Investigation ("FBI"), employees of Defendant United States, along with others, caused Todashev's wrongful death by the acts and omissions described above.

83. At all times material hereto, the agents of the United States worked within the scope of their employment.

84. United States agents McFarlane and Savard, acting jointly, violated the Fourth Amendment resulting in the death of Ibragim Todashev.

85. Neither of them intervened to prevent the wrongful acts, though able.

86. The United States, if a private person, would be liable to Plaintiff for the acts and omissions of its employee under the law of the place where said acts and

omissions occurred, to wit, under common law tort claims for wrongful death; negligent hiring, supervision and retention of agents and employees.

87. The Defendants knew McFarlane was unfit to serve as a sworn law enforcement officer when he was hired and failed to terminate him.

88. The wrongful acts and omissions of the Defendant United States caused injury and death to the Decedent and harm to his Estate and Survivors.

89. As a direct and foreseeable result of the respective negligent and careless acts and omissions of Defendants, Decedent suffered injury and death.

90. As a direct and foreseeable result of the respective intentional wrongful acts of Defendants, Decedent suffered injury and death.

91. Decedent left the following Survivors under Florida law:

| Name | Address | Relationship | Birthdate (If Minor) |
|---|---|---|---|
| Abdulbaki Todashev | Russia, Grozny, Str. Figurnaya 53 | Father | |
| Zulla Todasheva | Russia, Grozny, Str. Figurnaya 53 | Mother | |

92. Decedent's Survivors suffered emotional and economic damages as a result of his death, now and in the future.

93. Decedent suffered wrongful death by virtue of Defendant United States' actions, practices and policies in this regard. Decedent's Survivors sustained and continue to sustain damages for lost companionship, support and for mental pain and suffering. Plaintiff also seeks damages as the Personal

Representative of Decedent's estate for past and future medical and funeral expenses and lost earnings.

94. Plaintiff timely submitted an Administrative Claim to the Federal Bureau of Investigation and to the United States Department of Justice.

95. The United States failed to make a final disposition of the claims within six months and the claimants have elected to deem them denied.

WHEREFORE, Plaintiff seeks compensatory and punitive damages and costs against Defendant United States, and such other relief as justice may require.

### II.   Bivens Action (Fourth Amendment) (McFarlane, Savard)

96. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

97. Plaintiff is entitled to relief against Aaron McFarlane and John Savard because they violated decedent's Fourth Amendment rights.

98. Defendant Aaron McFarlane used deadly force against Ibragim Todashev without justification and despite any threat of serious harm to any person.

99. Defendants' unjustified use of deadly force constituted a battery on Todashev, which conduct led to his wrongful death under Florida law.

100. As a result of the wrongful acts of Defendants, the Estate and survivors of Ibragim Todashev have suffered harm as noted above.

WHEREFORE, Plaintiff seeks damages as noted below.

### III.   42 U.S.C. 1983 (Fourth Amendment) (Gagne, Cinelli)

101. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

102. Plaintiff is entitled to relief against Joel Gagne and Curtis Cinelli, because they violated state and constitutional law causing Decedent's death.

103. Gagne and Cinelli acted under color of state law.

104. Gagne and Cinelli acted jointly and collectively with McFarlane and Savard in the wrongful acts leading to the death of Ibragim Todashev.

105. Gagne and Cinelli failed to intervene to prevent the abuse, though able.

106. As a result of the wrongful acts of Gagne and Cinelli, the Estate and survivors of Ibragim Todashev have suffered harm as noted above.

107. As Plaintiff is obligated to counsel for the reasonable costs of legal services Plaintiff is entitled to recover those costs under 42 U.S.C 1988.

WHEREFORE, Plaintiff seeks relief as noted below.

### IV.   Conspiracy: McFarlane, Savard, Gagne, Cinelli)

108. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

109. Plaintiff is entitled to relief against Aaron McFarlane and John Savard, because they conspired with Joel Gagne and Curtis Cinelli to cause Decedent's death under *Bivens*.

110. Plaintiff is entitled to relief against Joel Gagne and Curtis Cinelli, because they conspired with Aaron McFarlane and John Savard to cause Decedent's death under 42 U.S.C. 1983.

111. Gagne and Cinelli acted under color of state law.

112. Gagne and Cinelli acted jointly and collectively with McFarlane and Savard in the wrongful acts leading to the death of Ibragim Todashev.

113. The Defendants acted strategically to ensure that there were no witnesses to constitutional abuses that were intended toward decedent and to prevent the discovery of those abuses in the course of investigation.

114. McFarlane, Savard, Gagne and Cinelli failed to intervene to prevent the violation of rights by the others, though able.

115. As a result of the wrongful acts of McFarlane, Savard, Gagne and Cinelli, the Estate and survivors of Ibragim Todashev suffered harm as noted above.

116. As Plaintiff is obligated to counsel for the reasonable costs of legal services Plaintiff is entitled to recover to the extent permitted under 42 U.S.C 1988.

WHEREFORE, Plaintiff seeks relief as noted below.

### Prayer for Relief

WHEREFORE, the Plaintiff respectfully seeks judgment as follows:

A. That the Court assume jurisdiction over this action;

B. Declare that the acts described herein violated Plaintiff's rights under the Constitution and Laws of the United States and State of Florida;

C. Compensatory damages against each of the defendants herein;

D. Punitive damages against the Individual Defendants;

E. Attorney fees and costs as permitted by 42 U.S.C. 1988;

F. A trial by jury on all issues so triable;

G. Such further relief as the Court deems just and proper.

Respectfully Submitted,

*s/James V. Cook*
JAMES V. COOK
Florida Bar Number 966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
Fax: 850 561-0836

THANIA DIAZ CLEVENGER
Florida Bar No. 97301
E-mail: tclevenger@cair.com
CAIR Florida, Inc.
8076 North 56th Street
Tampa, Florida 333617
Telephone: (813) 514-1414

TARK AOUADI
Florida Bar No. 0671223
E-mail: taouadi@cairflorida.org
CAIR Florida, Inc.
1507 S. Hiawassee Road, Suite 212
Orlando, Florida 32835
Telephone: (407) 490-0407

ATTORNEYS FOR PLAINTIFF