# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ESTATE OF IBRAGIM TODASHEV, by
HASSAN SHIBLY, as Personal Representative
of the ESTATE OF IBRAGIM TODASHEV,
and for the Survivors, ABDULBAKI
TODASHEVE, Father, and ZULLA
TODASHEVA, Mother.

               Plaintiffs,

v.                               CASE NO. 6:17-cv-0919-CEM-DCI

UNITED STATES OF AMERICA and
AARON McFARLANE, CHRISTOPHER
JOHN SAVARD, CURTIS CINELLI, and
JOEL GAGNE, individually,

               Defendants.

_____/

## THE INDIVIDUAL FEDERAL DEFENDANTS' MOTION TO DISMISS

COME NOW the Individual Federal Defendants, Special Agent Aaron McFarlane

and Officer Christopher Savard, by and through the undersigned counsel and pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby move to dismiss the

Plaintiffs' complaint, and in support thereof, submit the following.[1]

---

[1] As explained herein, SA McFarlane is not moving at this time to dismiss Count Two as against him. The parties have agreed that he need not answer that claim until after this Court rules on the instant motion. *See Jacques v. The First Liberty Ins. Corp.*, No. 16-1240, 2016 U.S. Dist. LEXIS 80556, *2 (M.D. Fla. June 9, 2016) ("The majority of courts considering this question have concluded that a party need not file an answer while a partial motion to dismiss is pending."); *Pushko v. Klebener*, No. 05-211, 2005 U.S. Dist. LEXIS 49132, *6 (M.D. Fla. June 10, 2005) ("Having considered . . . the clear weight of authority, it is concluded the filing of a motion to dismiss a portion of a complaint postpones equally the time for answering every part of the pleading."). Once this Court determines what, if any other claims survive dismissal, the parties can determine the appropriate scope of discovery.

## SYNOPSIS

There are two counts against the Individual Federal Defendants. In Count Two, Plaintiffs allege that they violated the decedent's Fourth Amendment right to be free from excessive force during an interview in the decedent's apartment. In Count Four, Plaintiffs allege that they conspired to provoke the decedent to justify the use of force against him, and otherwise failed to intervene to prevent his death.

The Individual Federal Defendants first respond that any claim for relief on behalf of the decedent's parents must be dismissed because the parents have not alleged a Fourth Amendment violation in their own right and there is no constitutional right to consortium with an adult child. Even if there were a constitutional right to consortium with an adult child under some circumstances, this Court should not expand the already limited scope of a non-statutory implied right of action pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), to include loss of consortium-type damages on behalf of family members. Second, because Plaintiffs fail to allege that Officer Savard used any force at all, he should be dismissed from the excessive force claim (Count Two). Third, the conspiracy claim (Count Four) must be dismissed because it is a threadbare recital of a cause of action with no plausible supporting facts and recent precedent forecloses any conspiracy-to-provoke claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also County of Los Angeles v. Mendez*, 137 S. Ct. 1539 (2017) (holding that prior alleged unconstitutional conduct does not change a later, reasonable use of force into an unreasonable one). Finally, Plaintiffs are not entitled to an award of attorney's fees against federal officers. That request for relief in Count Four against the Individual Federal Defendants must also be dismissed.

**BACKGROUND**

Plaintiff Hassan Shibly, as Personal Representative of the Estate of Ibragim Todashev and for his surviving parents, Abdulbaki Todasheve and Zulla Todasheva, filed this civil lawsuit against (1) the United States of America, (2) two federal officers in their individual capacities: Special Agent (SA) Aaron McFarlane of the Federal Bureau of Investigation (FBI) and retired Police Officer Christopher Savard of the Orlando Police Department, also a Task Force Officer for the FBI's Joint Terrorism Task Force; and (3) two Massachusetts State Troopers: Curtis Cinelli and Joel Gagne. Compl. ¶¶ 4-8, 25.

According to the complaint, Ibragim Todashev became of interest to the FBI due to his friendship with Tamerlan Tsarnaev, a participant in the Boston Marathon bombing. *Id.* ¶ 17. Troopers Cinelli and Gagne were also investigating a triple murder in Waltham, Massachusetts, that was linked to Tsarnaev. *Id.* ¶ 46. On May 21, 2013, Officer Savard contacted Todashev to arrange a meeting with him and all four individual defendants. *Id.* ¶¶ 44-45. The interview occurred in Todashev's apartment and Todashev invited a friend. *Id.* ¶¶ 49-50. The interview began around 7:00 p.m. *Id.* ¶ 51. The friend remained outside with Officer Savard until approximately 11:00 p.m., when Officer Savard allegedly told him to wait for Todashev at a local hookah bar. *Id.* ¶¶ 53-54. Inside the home, SA McFarlane and Troopers Gagne and Cinelli continued to interview Todashev. *Id.* ¶ 56.

The complaint alleges that "[a]ccording to the agents, at around 10:30 p.m., Gagne went outside to call the district attorney and remained there with Savard, leaving McFarlane and Cinelli alone in the apartment with Todashev." *Id.* ¶ 57. The complaint then alleges that "[a]round midnight, Todashev decided to leave the apartment. . . . [and] McFarlane shot him seven times." *Id.* ¶¶ 58-59.

The complaint alleges four claims: (1) a wrongful death claim against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* (Count One); (2) a Fourth Amendment excessive force claim against SA McFarlane and Officer Savard pursuant to *Bivens* (Count Two); (3) a Fourth Amendment excessive force claim against Troopers Gagne and Cinelli under 42 U.S.C. § 1983 (Count Three); and (4) a vague "conspiracy" claim against all four individual defendants (Count Four). This motion addresses Counts Two and Four as against SA McFarlane and Officer Savard.

## STANDARD OF REVIEW

"A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). The court must also "eliminate any allegations in the complaint that are merely legal conclusions." *ADA v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). The court need not accept as true unwarranted deductions of fact. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

After isolating the "well-pleaded factual allegations," the court must "then determine whether they plausibly give rise to an entitlement to relief." *Randall*, 610 F.3d at 710. The court is free to "infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Cigna Corp.*, 605 F.3d at 1290

(citation omitted). "A complaint is also subject to dismissal under Rule 12(b)(6) when it's allegations – on their face – show that an affirmative defense bars recovery on the claim." *Marsh v. Butler Cty.*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc).

## QUALIFIED IMMUNITY STANDARD

The defense of qualified immunity "protects government officials performing discretionary functions . . . from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996). "Once an officer raises the defense of qualified immunity, the plaintiff bears the burden to show that the officer is not entitled to it." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). To overcome qualified immunity at the motion-to-dismiss stage, the plaintiff must plead sufficient facts to allege that: (1) the defendant violated a constitutional right; and (2) the right was clearly established at the time of the alleged violation. *Morris v. Town of Lexington*, 748 F.3d 1316, 1322 (11th Cir. 2014); *see also Wilson v. Layne*, 526 U.S. 603, 609 (1999). A court may resolve the qualified immunity question with either prong, at its discretion. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Thus, where additional facts might be needed to decide whether a constitutional right was violated under prong one, this Court can skip to prong two without requiring discovery if the right was not clearly established at the time of the alleged violation. *See id.* at 238-39 (permitting courts to proceed to prong two at the pleading stage because it might be difficult to determine the existence of a constitutional violation on the facts pled).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every

reasonable official would have understood that what he is doing violates that right."
*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal brackets/quotations and citation omitted). The standard "do[es] not require a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." *Id.* (citations omitted); *see also Malley v. Briggs*, 475 U. S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). The analysis is limited to "the facts and the law present at the time that public officials make their decisions and does not take into account later facts or changes in the law." *Jackson v. Humphrey*, 776 F.3d 1232, 1242 (11th Cir. 2015). "In the qualified immunity analysis, we generally compare the acts of each defendant to analogous case law to determine whether each defendant has violated a clearly established constitutional right." *Corey Airport Servs., Inc. v. Decosta*, 587 F.3d 1280, 1288 n.6 (11th Cir. 2009). Only binding precedent can render the law clearly established for purposes of qualified immunity. *See Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc) (citation omitted).

## ARGUMENT

### I.   Todashev's Parents Are Not Entitled to Loss of Consortium-Type Damages.

The complaint alleges a Fourth Amendment excessive force claim against SA McFarlane and Officer Savard (Count Two) and a related conspiracy claim against all four individual defendants (Count Four). However, in addition to seeking redress for Todashev's injuries, these counts also seek redress for the alleged injuries of his parents: "As a result of the wrongful acts of Defendants, the Estate *and survivors* of Ibragim Todashev have suffered harm as noted above." Compl. ¶ 100 (emphasis added); *see also id.* ¶ 115. The harm "noted above" is "for lost companionship, support, and for mental pain and suffering" on behalf of the parents. *Id.* ¶ 93. But there is no constitutional right

- 6 -

to seek such damages under the Fourth Amendment or derivatively under a "conspiracy" claim. And even if such a right existed, this Court should not expand the *Bivens* remedy to include loss of consortium-type damages. Thus, this Court should dismiss Counts Two and Four to the extent they seek redress for the alleged injuries of Todashev's parents.

### A. Todashev's parents have not sufficiently alleged a constitutional violation in their own right.

The complaint does not allege a basis for seeking any redress under the Fourth Amendment on behalf of Todashev's parents. There is no allegation that either parent was subjected to any force, let alone excessive force, sufficient to give rise to a violation of *their* Fourth Amendment rights. Nor can the parents seek personal redress under the Fourth Amendment for the force used on their adult son. It is well-settled "the Fourth Amendment is a personal right that must be invoked by an individual." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (citation omitted). As a personal right, the Fourth Amendment "may not be vicariously asserted." *United States v. Quinn*, 475 U.S. 791, 794 (1986) (citation omitted); *see also United States v. McKennon*, 814 F.2d 1539, 1545 (11th Cir. 1987) (per curiam) ("Rights secured by the Fourth Amendment are personal and cannot be vicariously asserted.") (citations omitted); *Capshaw v. United States*, 618 F. App'x 618, 622 (11th Cir. 2015) ("The Supreme Court has consistently held that Fourth Amendment rights may not be vicariously asserted.") (citation omitted). As the Ninth Circuit explained, "the general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights." *Moreland v. Las Vegas Metro. Police Dept.*, 159 F.3d 365, 369 (9th Cir. 1998), *as amended* (Nov. 24, 1998). Because Counts Two and Four are premised on a violation of *Todashev's* Fourth Amendment rights, the request for relief on behalf of his parents must be dismissed.

Indeed, courts routinely reject Fourth Amendment claims brought by surviving relatives to vindicate their own alleged injuries in cases involving the death of a family member. As the Seventh Circuit explained in one excessive-force case: "No *surviving* plaintiff's constitutional rights were violated when the officers pulled [the decedent] over, searched his truck, sought to arrest him, or used deadly force against him, as Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Henning v. O'Leary*, 477 F.3d 492, 495 (7th Cir. 2007) (internal quotations and citation omitted). In *Estate of Lopez v. Torres*, 105 F. Supp. 3d 1148, 1159 n.4 (S.D. Cal. 2015), the court held the same: "Plaintiffs' second claim is brought on behalf of 'All Plaintiffs.' Yet if the underlying constitutional violation alleged is excessive force, then the [] claim may not be brought as a wrongful death action to vindicate the rights of [the family] because Fourth Amendment rights are personal to the decedent." The court concluded: "This claim must be dismissed." *Id.*; *see also Rzayeva v. United States*, 492 F. Supp. 2d 60, 83-84 (D. Conn. 2007) ("[C]ourts have generally held . . . that plaintiffs alleging federal civil rights violations may not sue for the loss of companionship of a family member. . . . Accordingly, [the] claims for the loss of society, consortium, or companionship of their mother are not legally cognizable under federal law and are hereby dismissed.") (collecting additional cases).

Moreover, the Eleventh Circuit has squarely held that "a parent does not have a constitutional right of companionship with an adult child." *Robertson v. Hecksel*, 420 F.3d 1254, 1262 (11th Cir. 2005). In that case, the court rejected a mother's claim for damages for "loss of support, loss of companionship, and past and future mental pain and suffering" arising out of the death of her adult son – the same damages alleged here –

finding that the claim for loss of consortium-type damages "finds no support in Supreme Court precedent." *Id.* at 1256, 1260. The inability to assert Fourth Amendment rights vicariously coupled with the Eleventh Circuit's holding in *Robinson* foreclose any award for damages on behalf of Todashev's parents as against SA McFarlane and Officer Savard. *See Gunn v. City of Montgomery*, No. 16-557, 2017 U.S. Dist. LEXIS 43301, *9-12 (M.D. Ala. Mar. 24, 2017) (holding that *Robertson* foreclosed a mother's attempt to seek loss of consortium-type damages for the force used on her adult son).[2]

Even if there were some derivative constitutional right to be asserted on behalf of the parents, there is certainly no precedent clearly establishing that right in the Eleventh Circuit. If precedent establishes anything, it is that no such right exists. *See Robertson*, 420 F.3d at 1255-56; *Gilmere*, 864 F.2d at 738-40. Having failed to allege the violation of a constitutional right, let alone a clearly established one, SA McFarlane and Officer Savard are entitled to qualified immunity on Counts Two and Four to the extent the parents are seeking personal redress for force used on their son. *See Zundel v. Mukasey*, No. 03-105, 2009 U.S. Dist. LEXIS 105011, *32 (E.D. Tenn. Nov. 10, 2009) (qualified immunity applied "because the Court has found no binding precedent . . . stating that a right to spousal consortium was a clearly established right under the Constitution").

---

[2] To the extent Plaintiffs are alleging that loss of consortium-type damages are necessary to remedy the alleged constitutional deprivation suffered by *Todashev*, the Eleventh Circuit has rejected that argument. *See Gilmere v. Atlanta*, 864 F.2d 734, 738-40 (11th Cir. 1989) (the "measure of damages . . . for the constitutional deprivations suffered by *the decedent*" does not, as a matter of federal law, include "injuries inflicted upon the survivors"). And to the extent Plaintiffs are alleging that Todashev's parents are entitled to loss of consortium-type damages through incorporation of Florida's Wrongful Death Statute by virtue of 42 U.S.C. § 1988, the Supreme Court has held that "Section 1988 does not in terms apply to *Bivens* actions." *See Carlson v. Green*, 446 U.S. 14, 25 n.11 (1980).

**B.  This Court should not expand the *Bivens* remedy to include loss of consortium-type damages.**

Even in the absence of precedent refusing to recognize a constitutional right to companionship with an adult child, this Court should not unilaterally expand the *Bivens* remedy to include loss of consortium-type damages. Doing so would mean that in every *Bivens* case alleging a constitutional violation against a federal defendant, not only would the purported victim have a potential cause of action, so would his or her family members. That would invite an onslaught of a new species of *Bivens* litigation that no court has recognized. This Court should not be the first.

In *Bivens*, the Supreme Court first recognized an implied cause of action for damages against federal officials "who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). It did so only after finding no "special factors counselling hesitation." *Bivens*, 403 U.S. at 396. Most recently, however, the Court has made clear that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857 (citation omitted).

In every *Bivens* case, "[t]he question is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Id.* (citation omitted). "The answer most often will be Congress." *Id.* That is because "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide." *Id.* at 1858. "In most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Id.* at 1857 (internal quotations and citation omitted). "As a result, the Court has urged 'caution' before 'extending *Bivens* remedies into any new

context." *Id.* (citation omitted). Whenever special factors counsel any hesitation, "a *Bivens* remedy will not be available." *Id.*

One such special factor is where (as here) the new proposed liability risks "an onslaught of *Bivens* actions." *Wilkie v. Robbins*, 551 U.S. 537, 562 (2007). As the Supreme Court explained:

> Congress is in a far better position than a court to evaluate the impact of a new species of litigation against those who act on the public's behalf. And Congress can tailor any remedy to the problem perceived, thus lessening the risk of raising a tide of suits threatening legitimate initiative on the part of the Government's employees.

*Id.* (internal quotations and citations omitted). The Court reaffirmed this principle just last Term: "Congress, then, has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government." *Abbasi*, 137 S. Ct. at 1856.

Although *Bivens* itself involved a Fourth Amendment violation, that does not answer the *Bivens* question here. The Eleventh Circuit has held that loss of consortium-type damages are not available to remedy constitutional deprivations as a matter of federal law, *Gilmere*, 864 F.2d at 738-40; and the Supreme Court has never expanded the *Bivens* remedy to include such damages. As the Supreme Court recently stated, "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Abbasi*, 137 S. Ct. at 1859; *see also id.* at 1864 ("Yet even a modest extension is still an extension."). Asking this Court to expand the *Bivens* remedy to include loss of consortium-type damages is in no uncertain terms an extension. Courts have uniformly refused to do so. *See, e.g.*, *Zundel*, 2009 U.S. Dist. LEXIS 105011, at *30-31 ("[T]he loss of spousal consortium is not a constitutional right that may be

asserted by a spouse in an action for *Bivens* damages.");[3] *Cromety v. Elkton Fed. Corr. Inst.*, No. 05-518, 2006 U.S. Dist. LEXIS 11912, *7 n.1 (N.D. Ohio Mar. 22, 2006) (refusing to imply *Bivens* remedy for loss of consortium, noting that "Plaintiffs provide no legal support for this argument, nor does such support exist"); *Shimp v. RTC*, No. 94-0695, 1994 U.S. Dist. LEXIS 11064, *4 (E.D. Pa. Aug. 9, 1994) (holding in *Bivens* case that "[t]here is no authority for spousal recovery for loss of consortium occasioned by a violation of the other spouse's federal rights"). This Court should refuse as well.

*          *          *

In sum, because precedent prohibits it and because this Court should not expand the *Bivens* remedy even in the absence of that precedent, this Court should dismiss Counts Two and Four against SA McFarlane and Officer Savard to the extent they seek any redress "for lost companionship, support, and mental pain and suffering" on behalf of Todashev's parents for the alleged use of force on their adult son.

## II.   This Court Should Dismiss Officer Savard from Count Two.

"Because vicarious liability is inapplicable to *Bivens* . . . a plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added). Here, although Count Two purports to allege an excessive force claim against Officer Savard, the complaint makes clear that SA McFarlane, *not* Officer Savard, discharged his weapon. *See, e.g.*, Compl. ¶ 59 ("As Todashev tried to leave, McFarlane shot him seven times.");

---

[3] On appeal, the Sixth Circuit affirmed. *See Zundel v. Holder*, 687 F.3d 271 (6th Cir. 2012). Although the court declined to address whether there could *ever* be a right to a consortium remedy under *Bivens*, it held that the claim the plaintiff was advancing – providing every citizen with a potential *Bivens* remedy every time the government was involved in the separation of spouses either through deportation or incarceration – was too much. *Id.* at 280. The court concluded that the plaintiff "may not maintain a claim for the unqualified right she asserts in this context." *Id.*

- 12 -

¶ 98 ("Defendant Aaron McFarlane used deadly force against Ibragim Todashev."). In fact, there is no allegation that any other officer used any force at all, and only Trooper Cinelli is alleged to have been in the room with SA McFarlane when Todashev was shot. Thus, Officer Savard cannot be held directly liable under the Fourth Amendment and should be dismissed from Count Two. *See Kimbrough v. City of Cocoa*, No. 05-471, 2005 U.S. Dist. LEXIS 43794, *37-38 (M.D. Fla. June 8, 2005) (dismissing excessive force claim against officer where there were no allegations that he acted with any force against the plaintiff).

III.   **The Complaint Fails to Allege a Cognizable Theory of Secondary Liability against either SA McFarlane or Officer Savard.**

A.   **There are no factual allegations in Count Four sufficient to state a conspiracy claim.**

To prevail on a conspiracy claim, "a plaintiff must show that an agreement between two or more people . . . to violate his constitutional rights resulted in an actual violation of those rights." *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1191 (11th Cir. 2011). "A plaintiff claiming a conspiracy . . . must make particularized allegations that a conspiracy exists." *Briggs v. Briggs*, 245 F. App'x 934, 935 (11th Cir. 2007) (citation omitted). "Vague and conclusory allegations that merely suggest a . . . conspiracy are insufficient to withstand a motion to dismiss." *Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873, 880 (11th Cir. 2016). Merely "stringing together" acts of individuals is insufficient to demonstrate the existence of a conspiracy. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

Count Four alleges that (1) the individual defendants acted jointly and conspired to cause Todashev's death, (2) each defendant failed to intervene, though able, (3) as a result, Todashev and his parents suffered harm, and (4) Plaintiffs are entitled to attorney's

fees. *See* Compl. ¶¶ 109-12, 114-16. These statements are just a conclusory reformulation of the elements of conspiracy. It is well settled that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Abreu-Velez v. Bd. of Regents of the Univ. Sys. of Ga.*, 631 F. App'x 888, 890 (11th Cir. 2015) ("[S]peculative and conclusory allegations won't survive a motion to dismiss."), *cert. denied,* 136 S. Ct. 1838 (2016). This Court should dismiss this threadbare conspiracy claim. *See Holmes v. Hale*, No. 16-14712, 2017 U.S. App. LEXIS 11508, *8-9 (11th Cir. June 28, 2017) (simply alleging defendants acted "in concert" does not state a conspiracy claim).

Count Four contains one arguably factual allegation: that all four individual defendants "acted strategically to ensure that there were no witnesses to constitutional abuses that were intended toward decedent and to prevent the discovery of those abuses in the course of the investigation." Compl. ¶ 113. This contention does not save the conspiracy claim. It is equally (if not more) plausible that the defendants asked Todashev's friend to remain outside *not* for the purpose of ensuring there were no witnesses to "cover up" some unspecified "abuses," but simply because his presence could have interfered with the interview, Todashev might not have been as forthcoming with his friend present; and further, to protect the integrity of the investigation by preventing the friend from disclosing the information revealed during the interview to third parties or the general public, thereby potentially jeopardizing a murder investigation with suspects still at large. In light of these obvious alternative explanations, this Court should not credit the speculative belief by Plaintiffs that Todashev's friend remained outside because the individual defendants wanted to ensure there were no witnesses. *See*

*Abreu-Velez*, 631 F. App'x at 890 ("[S]peculative and conclusory allegations won't survive a motion to dismiss."). Moreover, there is no case law even remotely suggesting that not allowing a third-party to observe an interview is somehow the equivalent of an unconstitutional conspiracy for a later use of force. SA McFarlane and Officer Savard are entitled to qualified immunity on this conspiracy claim.[4]

Count Four does not contain any other allegations of fact, let alone any specific, non-conclusory allegations supporting a conspiracy at all. This Court should accordingly dismiss that claim as against SA McFarlane and Officer Savard.

**B.  Precedent holds that any conspiracy-to-provoke claims fails.**

Elsewhere in the complaint, Plaintiffs suggest a different conspiracy theory – though it remains unclear exactly what they plead. Compl. ¶¶ 63-71. The complaint states in conclusory fashion that the individual defendants conspired to "orchestrate events," over the course of several weeks, with unspecified "psychological techniques," "to try to provoke Todashev into doing something that would justify an arrest or use of deadly force." *Id.* ¶¶ 63-64, 68, 69. It is unclear what any of this means. Provoking a suspect to do "something that would justify an arrest" encompasses a whole range of lawful

---

[4] It is also well established that the separate act of allegedly "covering up" a Fourth Amendment violation is not a standalone Fourth Amendment claim. *See Bentz v. Cowan*, No. 13-1259, 2013 U.S. Dist. LEXIS 181240, *5 (S.D. Ill. Dec. 30, 2013) ("Plaintiff shall also be allowed to proceed on his excessive force claims, but a conspiracy to 'cover up' those acts after the fact does not amount to a constitutional violation in and of itself."); *Lang v. County of Sonoma*, No. 12-983, 2012 U.S. Dist. LEXIS 142746, *7 (N.D. Cal. Oct. 2, 2012) ("But Plaintiff cites no case law to support the proposition that a cover-up of unconstitutional conduct is properly viewed as violative of the underlying constitutional right."); *Green v. New Jersey State Police*, No. 4-7, 2006 U.S. Dist. LEXIS 55334, *13-14 (D.N.J. Aug. 9, 2006) ("Green may not bootstrap the other officers' alleged Fourth Amendment violations into a claim against Schusler by merely alleging a conspiracy to cover-up the Fourth Amendment violations after the fact."); *James v. Rednour*, No. 10-1083, 2012 U.S. Dist. LEXIS 119889, *9-10 (S.D. Ill. Aug. 24, 2012) ("Covering up the use of excessive force by other persons does not violate the Plaintiff's constitutional rights."); *Cipolla v. Hayman*, No. 10-889, 2011 U.S. Dist. LEXIS 141247, *21 (D.N.J. Dec. 8, 2011) ("Plaintiff's allegation that Defendants . . . conspired to 'cover up' the incident fails to allege any facts indicating that any of these defendants violated Plaintiff's constitutional rights.").

conduct, including simply getting Todashev to confess to a crime. It is well established that where the allegations equally plead lawful conduct, the claim must be dismissed. *See Iqbal*, 556 U.S. at 680 (where allegations are "consistent with" unlawful conduct, but also "compatible with" and "more likely explained by" lawful conduct, "complaint must be dismissed"); *Cigna Corp.*, 605 F.3d at 1295 (where conduct is "equally indicative of rational independent action as it is concerted, illegitimate conduct," allegations do not state a plausible claim for relief).

Even if the defendants did somehow conspire to provoke a confrontation with Todashev – a claim for which there are no well-pled *factual* allegations to support – that theory of secondary liability is not viable under recent Supreme Court precedent. Indeed, one week after the filing of the complaint, the Court decided *County of Los Angeles v. Mendez*, 137 S. Ct. 1539 (2017). In that case, the defendant-officers entered the plaintiff's residence without a warrant. *Id.* at 1544-45. The plaintiff was inside holding a BB-gun. *Id.* at 1545. The defendant-officers shouted "Gun!" and shot the plaintiff and his wife multiple times. *Id.* The lower courts denied qualified immunity, applying the Ninth Circuit's now-defunct "provocation" theory of secondary liability. *Id.* That theory recognized a Fourth Amendment excessive force claim where an officer engaged in unconstitutional conduct that "intentionally or recklessly provokes a violent confrontation." *Id.* (citation omitted). Thus, even though the use of force itself was justified under the circumstances in that case, the lower courts still recognized a Fourth Amendment excessive force violation because the unlawful entry provoked the violent confrontation. *Id.* The Supreme Court reversed.

The Court found the Ninth Circuit's provocation theory "a novel and unsupported path to liability." *Id.* at 1547. The theory sought to expand liability for excessive force where the officers "set the table for the use of force." *Id.* According to the Court, "[t]hat is wrong." *Id.* Even where the officers *intended* to provoke the suspect into doing something that would justify the use of force – exactly what the complaint, without any factual content, contends here – the Court made clear that inquiry into an officer's subjective intent was "unwarranted and illogical." *Id.* at 1548. Instead, the test for excessive force remains an "objective inquiry," focusing on whether the force was reasonable under the circumstances alleged "*when the conduct occurred.*" *Id.* at 1546-47 (quoting *Saucier v. Katz*, 533 U.S. 194, 207 (2001)) (emphasis added). Looking back in time to see if the officers engaged in some other unconstitutional conduct intending to provoke a violent confrontation is simply not how the analysis works. *Id.* at 1547.

Plaintiffs plainly violate this command by attempting to support their provocation claim by relying on alleged investigatory activity that occurred weeks prior to the use of force, including alleged conduct directed at Todashev's friends and family. Compl. ¶ 64-65. None of these alleged facts, which are connected by nothing more than the investigation itself and with nothing other than conclusory claims of unlawful conduct, can establish whether the force used at the time of the shooting was unreasonable. *See Mitchell v. City of Mobile*, No. 15-360, 2017 U.S. Dist. LEXIS 119676, *5 n.1 (S.D. Ala. July 28, 2017) ("This and other arguments by Plaintiff, at least implicitly, stand for the proposition that an officer's unreasonable actions before the use of deadly force render such use of force per se unreasonable. Such a proposition has recently been rejected by the Supreme Court.") (citing *Mendez*, 137 S. Ct. at 1546). If anything, the investigative

activity alleged here is less egregious than the conduct at issue in *Mendez*, an unconstitutional entry prior to the use of force. In any event, there is simply no constitutional right to be free from being provoked into justifying an arrest or use of force, let alone a clearly established one. SA McFarlane and Officer Savard are entitled to qualified immunity on any conspiracy-to-provoke claim that may exist here.[5]

### C. The complaint fails to sufficiently plead a failure-to-intervene claim.

Throughout the complaint, though not tied to any count, are failure-to-intervene allegations. Compl. ¶¶ 70, 85, 114. It is unclear what unlawful conduct SA McFarlane and Officer Savard failed to prevent, when or where it occurred, or which defendant engaged in the alleged unlawful conduct. Without such allegations, the complaint fails to place them on sufficient notice of the claims against them. *See Twombly*, 550 U.S. at 555 (to state a claim for relief, a plaintiff must allege facts with enough allegations to give defendants fair notice of the claims against them). Moreover, simply alleging that each defendant "failed to intervene to prevent the violation of rights by the others, though able," Compl. ¶ 114, is another "[t]hreadbare recital[] of the elements of a cause of action," which does not suffice. *Iqbal*, 556 U.S. at 678.[6]

---

[5] Prior to the Supreme Court's decision in *Mendez*, the Eleventh Circuit had yet to weigh in on whether it would adopt the Ninth Circuit's now-defunct provocation rule. *See Williams v. Deal*, 659 F. App'x 580, 596 (11th Cir. 2016) ("Even if we applied the Ninth Circuit's rule, the plaintiff's second theory fails because there was no unconstitutional provocation."), *cert. denied* 137 S. Ct. 1346 (2017). Thus, had *Mendez* gone the other way, SA McFarlane and Officer Savard would still be entitled to qualified immunity because the law was not clearly established in the Eleventh Circuit at the time when the shooting occurred.

[6] *See also Savannah v. Collins*, 547 F. App'x 874, 877 (10th Cir. 2013) (because allegation that officer failed to intervene is a legal conclusion and complaint does not otherwise allege specific facts indicating there was an opportunity to intervene, "[the plaintiff] should not have the opportunity to continue with litigation against [the non-shooting officer]"); *Perez v. United States*, 103 F. Supp. 3d 1180, 1213 (S.D. Cal. 2015) (dismissing failure-to-intervene claim, noting that "Court need not accept as true the conclusory allegation that a sufficient amount of time elapsed . . . to intervene and stop the shooting") (internal quotations omitted); *Boddie v. City of New York*, No. 15-4275, 2016 U.S. Dist. LEXIS 50248, *7 (S.D.N.Y. Apr. 13, 2016) (where complaint baldly alleges defendants failed to intervene and report conduct, "[t]hese are precisely the types of conclusory allegation that, without factual support, must be dismissed").

For these reasons, this Court should dismiss Count Four to the extent it purports to allege a failure-to-intervene claim.

Presuming the allegation is that SA McFarlane and Officer Savard failed to intervene to stop the shooting, the claim fails as a matter of law. As to SA McFarlane, the claim fails because he is the officer alleged to have discharged his weapon. *See* Compl. ¶¶ 59, 67, 77, 98. No other officer is alleged to have done so. It is well established that to the extent an officer can be liable for failing to intervene it is for failing "to protect the victim of *another officer's* use of excessive force," not his own. *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341-42 (11th Cir. 2007) (quotation marks omitted) (emphasis added). Having alleged that SA McFarlane, and only SA McFarlane, used any force on Todashev, a failure-to-intervene claim against him is not legally cognizable.

As to Officer Savard, although an officer may have a duty to intervene to prevent the use of excessive force by another officer depending on the facts and circumstances, "it must also be true that the non-intervening officer was in a position to intervene." *Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008); *see also Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000). The Eleventh Circuit has recently stated the obvious: an officer not in the room is not in a position to intervene to stop a use of force. *See Militello v. Sheriff of the Broward Sheriff's Office*, 684 F. App'x 809, 813 (11th Cir. 2017) ("[Plaintiff] has not pointed us to any case (nor have we ourselves found one) . . . in which we held that an officer was in a position to intervene against the use of excessive force where he or she was unable to observe a fellow officer's use of force."); *see also Carr v. Tatangelo*, 338 F.3d 1259, 1270 n.22 (11th Cir. 2003) (holding that where officer "did not participate in the shooting," and "was unaware

of the rapidly developing situation . . . which gave him no time to act from across the street," he is entitled to qualified immunity on failure-to-intervene claim), *as amended* (Sept. 29, 2003). Here, the complaint never alleges that Officer Savard was in the room when force was used on Todashev. Nor does it allege what he could have done to stop that force from outside the apartment building. Even for any officer in the room (and the only other person alleged to be in the room is Trooper Cinelli), the complaint is so threadbare, an opportunity to intervene is not present based on the facts pled. In any event, absent any precedent showing it was clearly established at the time of the shooting that Officer Savard was required to do the impossible – prevent a shooting he did not observe – he is entitled to qualified immunity on any failure-to-intervene claim.

*          *          *

In sum, Count Four, as pled in its various manifestations, finds no support in the case law and should be dismissed. And because the complaint fails to allege a cognizable theory of secondary liability against Officer Savard or that he used any force at all, he should be dismissed from this case altogether.

## IV.    Plaintiffs are Not Entitled to Attorney's Fees in *Bivens* Cases.

Plaintiffs recognize they are not entitled to attorney's fees under 42 U.S.C. § 1988 against SA McFarlane and Officer Savard on Count Two, the *Bivens* claim. That is likely because it is well settled that attorney's fees under Section 1988 are not available against federal defendants in *Bivens* cases. *See Harrington v. Wells*, No. 15-41, 2016 U.S. Dist. LEXIS 151318, *9 (S.D. Ga. Nov. 1, 2016) (collecting cases). However, Count Four, the conspiracy claim, which is alleged against all four individual defendants, does seek "reasonable costs of legal services . . . *to the extent permitted* under 42 U.S.C. [§] 1988."

Compl., at 14 (emphasis added). To the extent Plaintiffs are requesting such fees against SA McFarlane and Officer Savard, that request must be dismissed.

The Eleventh Circuit has definitively held that federal defendants cannot be liable for attorney's fees under Section 1988, "except in actions to enforce against the defendant a provision of the statutes specifically listed in section 1988." *See Martin v. Heckler*, 773 F.2d 1145, 1152-53 (11th Cir. 1985) (en banc). Count Four makes clear that SA McFarlane and Officer Savard are being sued "because they conspired . . . to cause Decedent's death under *Bivens*." Compl. ¶ 109. It is well settled that "*Bivens* claims . . . are not listed in Section 1988 as a cause of action in which the Court may award attorney's fees against a federal defendant." *Harrington*, 2016 U.S. Dist. LEXIS 151318, at *9); *see also Carlson*, 446 U.S. at 25 n.11 ("Section 1988 does not in terms apply to *Bivens* actions."). This Court should accordingly dismiss any request for attorney's fees against SA McFarlane and Officer Savard. *See id.* at *9 (denying leave to add request for attorney's fees on *Bivens* claim as futile); *Serdlow v. City of Portland*, No. 00-580, 2001 U.S. Dist. LEXIS 13551, *5 (D. Ore. Aug. 17, 2001) ("Plaintiff does not, and cannot, bring his action against the federal defendants under § 1983, and the plain language of [Section 1988] does not allow recovery of attorney fees for a *Bivens* action. Therefore, plaintiff's prayer for attorney fees as against the federal defendants must be dismissed.").

## CONCLUSION

With respect to the Individual Federal Defendants, this case should proceed into discovery on the single Fourth Amendment excessive force claim against the individual defendant alleged to have discharged his weapon: SA McFarlane. Officer Savard should be dismissed from this case altogether. Moreover, the request for relief against SA

- 21 -

McFarlane should be limited to the damages allegedly suffered by the decedent, not his parents. Finally, Plaintiffs are not entitled to attorney's fees against SA McFarlane and Officer Savard. This Court should grant the motion to dismiss along these lines so that this case can proceed accordingly.

This 16th day of October, 2017.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General, Civil Division

W. STEPHEN MULDROW
Acting United States Attorney

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil Division

MARY HAMPTON MASON
Senior Trial Counsel, Torts Branch, Civil Division

/s/ Siegmund F. Fuchs
SIEGMUND F. FUCHS
Trial Attorney, Torts Branch, Civil Division
U.S. Department of Justice
Ben Franklin Station
P.O. Box 7146
Washington, D.C.  20044-7146
Tel (202) 616-4322; Fax (202) 616-4314
siegmund.f.fuchs@usdoj.gov

Attorneys for the Individual Federal Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 16, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to the following CM/ECF participants:

James V. Cook, Esq.
Thania Diaz Clevenger, Esq.
Tark Aouadi, Esq.

/s/ Siegmund F. Fuchs
SIEGMUND F. FUCHS
Trial Attorney, Torts Branch, Civil Division
U.S. Department of Justice