# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ESTATE OF IBRAGIM TODASHEV, by
HASSAN SHIBLY, as Personal Representative
of the ESTATE OF IBRAGIM TODASHEV,
and for the Survivors, ABDULBAKI
TODASHEVE, Father, and ZULLA
TODASHEVA, Mother.

                Plaintiff,

v.                                      CASE NO. 6:17-cv-0919-CEM-DCI

UNITED STATES OF AMERICA and
AARON McFARLANE, CHRISTOPHER
JOHN SAVARD, CURTIS CINELLI, and
JOEL GAGNE, individually,

                Defendants.

_____/

## THE INDIVIDUAL FEDERAL DEFENDANTS'
## MOTION TO DISMISS THE AMENDED COMPLAINT

COME NOW the Individual Federal Defendants, Special Agent Aaron McFarlane

and Task Force Officer Christopher Savard, by and through the undersigned counsel and

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby move to

dismiss the Plaintiff's amended complaint, and in support thereof, submit the following.[1]

---

[1] SA McFarlane is not moving at this time to dismiss the Fourth Amendment claim in Count Two. The parties have agreed that he need not respond to that claim until after this Court rules on the instant motion. *See Jacques v. The First Liberty Ins. Corp.*, No. 16-1240, 2016 U.S. Dist. LEXIS 80556, *2 (M.D. Fla. June 9, 2016) ("The majority of courts considering this question have concluded that a party need not file an answer while a partial motion to dismiss is pending."); *Pushko v. Klebener*, No. 05-211, 2005 U.S. Dist. LEXIS 49132, *6 (M.D. Fla. June 10, 2005) ("Having considered . . . the clear weight of authority, it is concluded the filing of a motion to dismiss a portion of a complaint postpones equally the time for answering every part of the pleading.").

<u>**SYNOPSIS**</u>

Plaintiff filed his original complaint on May 22, 2017. (ECF 1). That complaint raised two counts against SA McFarlane and TFO Savard: (1) a Fourth Amendment excessive force claim (Count Two); and (2) a conspiracy-to-provoke claim (Count Four), both under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). It also raised Fourth Amendment excessive force and conspiracy claims against Massachusetts State Troopers Curtis Cinelli and Joel Gagne under 42 U.S.C. § 1983 and a wrongful death claim against the United States of America.[2]

SA McFarlane and TFO Savard moved to dismiss the conspiracy claim, any request for damages on behalf of the parents, and the request for attorney's fees. (ECF 19). TFO Savard also moved to dismiss the excessive force claim because there was no allegation he used any force or observed another officer use any force on Todashev. *Id.* Instead of responding to that motion, Plaintiff amended his complaint. (ECF 32). The amended complaint appears to clarify that Plaintiff is *not* seeking any damages on behalf of Todashev's parents or attorney's fees on his *Bivens* claims.

Plaintiff also apparently realized the original complaint was insufficient with respect to asserting conspiracy claims. The amended complaint deletes the conspiracy-to-provoke allegations, a claim foreclosed by *County of Los Angeles v. Mendez*, 137 S. Ct. 1539 (2017) (holding that provoking a person with the intent to justify a later use of force does not give rise to a Fourth Amendment violation); and attempts to recast them as "third degree tactics to force Todashev to implicate himself in a crime." Plaintiff alleges

[2] The undersigned counsel represents SA McFarlane and TFO Savard only. The United States is represented by the United States Attorney's Office for the Middle District of Florida. Troopers Cinelli and Gagne are represented by separate counsel.

- 2 -

that this gives rise to a Fifth Amendment self-incrimination claim. He is wrong. That claim is foreclosed by *Chavez v. Martinez*, 538 U.S. 760 (2003) (holding that coercive tactics do not give rise to a self-incrimination claim absent use of the coerced evidence in a criminal proceeding). Further confusing matters, the amended complaint removes TFO Savard, a federal task force officer, from the *Bivens* claims and adds him to the Section 1983 claim and a newly pled conspiracy claim under 42 U.S.C. § 1985(3).

In sum, the amended complaint alleges: (1) a wrongful death claim against the United States under the Federal Tort Claims Act (Count One); (2) Fourth and Fifth Amendment claims against SA McFarlane under *Bivens* (Count Two); (3) Fourth and Fifth Amendment claims against TFO Savard and Troopers Cinelli and Gagne under Section 1983 (Count Three); (4) a "conspiracy" claim against SA McFarlane under *Bivens* (Count Four); and (5) a conspiracy claim against TFO Savard and Troopers Cinelli and Gagne under Section 1985(3) (Count Five). *See generally* Am. Compl.

SA McFarlane and TFO Savard first respond that to the extent Plaintiff is still seeking damages on behalf of Todashev's parents, this Court should dismiss that request because Plaintiff does not assert a cognizable basis to seek such relief under *Bivens*. Second, there is no right against self-incrimination actionable in a civil suit for damages under the circumstances pled here, let alone a clearly established one. That claim and the related conspiracy claims (Counts Two, Three, Four, and Five) should therefore be dismissed. Third, TFO Savard cannot be held liable under Section 1983, which does not apply to federal task force officers. Nor can he be held liable for excessive force where it is not alleged he used any force or had an opportunity to prevent any use of force. Count Three against him should be dismissed. Finally, Plaintiff does nothing to cure the defects

in the "conspiracy" claims. Not only should this Court decline to recognize a *Bivens* conspiracy claim, there is no basis here to sue TFO Savard under Section 1985(3). Both conspiracy claims (Counts Four and Five) should be dismissed.

## BACKGROUND

Plaintiff Hassan Shibly, as Personal Representative of the Estate of Ibragim Todashev and for his surviving parents, Abdulbaki Todasheve and Zulla Todasheva, filed this civil lawsuit against: (1) the United States; (2) two federal officers in their individual capacities: Special Agent (SA) Aaron McFarlane of the Federal Bureau of Investigation (FBI) and retired Task Force Officer (TFO) for the FBI's Joint Terrorism Task Force Christopher Savard; and (3) two Massachusetts State Troopers: Curtis Cinelli and Joel Gagne. Am. Compl. ¶¶ 4-8, 32.

According to the amended complaint, Ibragim Todashev became of interest to the FBI due to his friendship with Tamerlan Tsarnaev, a participant in the Boston Marathon bombing. *Id.* ¶ 26. Troopers Cinelli and Gagne were also investigating a triple homicide linked to Tsarnaev. *Id.* ¶¶ 28, 66. On May 21, 2013, TFO Savard contacted Todashev to arrange a meeting with him and all four individual defendants. *Id.* ¶ 64-65. The interview occurred in Todashev's apartment and Todashev invited a friend, Khusen Taramov. *Id.* ¶¶ 68-69. The interview began around 7:00 p.m. *Id.* ¶ 72. The friend was asked to remain outside with TFO Savard until approximately 11:00 p.m., when TFO Savard allegedly ordered the friend to leave. *Id.* ¶¶ 73, 76-77. Inside the home, SA McFarlane and Troopers Gagne and Cinelli continued to interview Todashev. *Id.* ¶ 79. Trooper Gagne stepped outside to call the district attorney, leaving SA McFarlane and Trooper Cinelli alone with Todashev inside his apartment. *Id.* ¶ 83. The amended complaint alleges that

"[a]round midnight, Todashev *apparently* attempted to leave the apartment. . . . [and] McFarlane shot him seven times." *Id.* ¶¶ 84-85 (emphasis added).

This motion addresses the Fifth Amendment self-incrimination and conspiracy claims against SA McFarlane and TFO Savard, and the Fourth Amendment excessive force claim against TFO Savard. (Counts Two, Three, Four, and Five).

## STANDARD OF REVIEW

"A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). The court must also "eliminate any allegations in the complaint that are merely legal conclusions." *ADA v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). The court need not accept as true unwarranted deductions of fact. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

After isolating the "well-pleaded factual allegations," the court must "then determine whether they plausibly give rise to an entitlement to relief." *Randall*, 610 F.3d at 710. The court is free to "infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Cigna Corp.*, 605 F.3d at 1290 (citation omitted). "A complaint is also subject to dismissal under Rule 12(b)(6) when its allegations – on their face – show that an affirmative defense bars recovery on the claim."

*Marsh v. Butler Cty.*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc).

## QUALIFIED IMMUNITY STANDARD

The defense of qualified immunity "protects government officials performing discretionary functions . . . from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996). "Once an officer raises the defense of qualified immunity, the plaintiff bears the burden to show that the officer is not entitled to it." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). To overcome qualified immunity at the motion-to-dismiss stage, the plaintiff must plead sufficient facts to allege that: (1) each defendant violated a constitutional right; and (2) the right was clearly established at the time of the alleged violation. *Morris v. Town of Lexington*, 748 F.3d 1316, 1322 (11th Cir. 2014); *see also Wilson v. Layne*, 526 U.S. 603, 609 (1999). A court may resolve the qualified immunity question with either prong, at its discretion. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Thus, where additional facts might be needed to decide whether a constitutional right was violated under prong one, this Court can skip to prong two without requiring discovery if the right was not clearly established at the time. *See id.* at 238-39 (permitting courts to proceed to prong two at pleading stage where it might be difficult to determine existence of a constitutional violation on the facts pled).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal brackets/quotations and citation omitted). The standard "do[es] not require a case directly on point, but existing precedent

must have placed the . . . constitutional question beyond debate." *Id.* (citations omitted); *see also Malley v. Briggs*, 475 U. S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). The analysis is limited to "the facts and the law present at the time that public officials make their decisions and does not take into account later facts or changes in the law." *Jackson v. Humphrey*, 776 F.3d 1232, 1242 (11th Cir. 2015). "In the qualified immunity analysis, we generally compare the acts of each defendant to analogous case law to determine whether each defendant has violated a clearly established constitutional right." *Corey Airport Servs., Inc. v. Decosta*, 587 F.3d 1280, 1288 n.6 (11th Cir. 2009). Only binding precedent can render the law clearly established for purposes of qualified immunity. *See Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc) (citation omitted).

## ARGUMENT

### I. Todashev's Parents Are Not Entitled to Damages under *Bivens*.

The amended complaint alleges Fourth Amendment excessive force and Fifth Amendment self-incrimination claims (Count Two) and related conspiracy claims (Count Four) against SA McFarlane, all under *Bivens*. In the original complaint, Plaintiff sought redress for Todashev's injuries, as well as for the alleged injuries of his parents. In response, SA McFarlane (and TFO Savard) moved to dismiss any request for relief on behalf of the parents on the grounds that loss of consortium-type damages are unavailable under the Fourth Amendment and this Court should not extend the *Bivens* remedy to include such damages. In the amended complaint, Plaintiff appears to agree. He has added the following statement to the "Damages" section of the amended complaint: "To the extent a cause of action is not governed by the damages provision of the Florida Wrongful Death Act, Plaintiff seeks damages to the Estate only." Am. Compl. ¶ 167. The

Florida Wrongful Death Act does not apply to *Bivens* claims. Indeed, "*Bivens* defendants are *federal* officials brought into *federal* court for violating the *Federal* Constitution." *Carlson v. Green*, 446 U.S. 14, 25 n.11 (1980) (emphasis added). The Eleventh Circuit has held that as a matter of federal law the "measure of damages . . . for the constitutional deprivations suffered by [a] decedent" does not include "injury inflicted upon the survivors." *Gilmere v. Atlanta*, 864 F.2d 734, 738-40 (11th Cir. 1989); *see also Robertson v. Hecksel*, 420 F.3d 1254, 1262 (11th Cir. 2005) ("[A] parent does not have a constitutional right of companionship with an adult child."). And there is no basis to apply the Florida Wrongful Death Act to a *Bivens* claim by virtue of 42 U.S.C. § 1988 as the Supreme Court has held that "Section 1988 does not in terms apply to *Bivens* actions." *Carlson*, 446 U.S. at 25 n.11. This Court should accordingly dismiss any request for relief on behalf of the parents on the *Bivens* claims (Counts Two and Four).

II.      **This Court Should Dismiss the Fifth Amendment and any related "conspiracy" claims against SA McFarlane and TFO Savard.**

         A.      **Plaintiff has failed to state a Fifth Amendment self-incrimination claim, let alone a clearly established one.**

The amended complaint newly pleads Fifth Amendment self-incrimination and related "conspiracy" claims against SA McFarlane (Counts Two and Four) and TFO Savard (Counts Three and Five). But the Supreme Court has held that an alleged coercive interrogation does not give rise to a Fifth Amendment self-incrimination violation: "We fail to see how, based on the text of the Fifth Amendment, [a plaintiff] can allege a violation of this right [where he] was never prosecuted for a crime, let alone compelled to be a witness against himself in a criminal case." *Chavez*, 538 U.S. at 766. Here, there is no allegation that Todashev was ever prosecuted for a crime or compelled to be a witness against himself in a criminal case. Plaintiff simply alleges that "Todashev was effectively

seized and forced to incriminate himself. . . . prior to being asked to sign a *Miranda* waiver." Am. Compl. ¶¶ 121-22, 137-38, 149-50, 162-63. *Chavez* forecloses any purported Fifth Amendment claim: "Our holdings . . . demonstrate that . . . mere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness." 538 U.S. at 769. There being no Fifth Amendment violation, the *Chavez* Court concluded that the defendant-officers in that case were entitled to qualified immunity. *Id.* at 776. That same result is compelled here.[3] And because Plaintiff has failed to state a claim for an underlying Fifth Amendment violation, this Court should dismiss any related "conspiracy" claims as well. *See AFL-CIO v. City of Miami*, 637 F.3d 1178, 1191 (11th Cir. 2011) (a conspiracy claim requires "an actual violation" of a constitutional right). Certainly, Plaintiff has not identified a clearly established right in this context, conspiracy or otherwise.

> **B.** **This Court should not extend the limited *Bivens* remedy to include Fifth Amendment self-incrimination violations.**

Even if Plaintiff had adequately pled a Fifth Amendment claim, SA McFarlane and TFO Savard are not aware of any case extending the *Bivens* remedy to include self-incrimination violations. In *Bivens*, the Supreme Court recognized an implied cause of action for damages *under the Fourth Amendment* against federal officials "who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). However, the Court has since made clear that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (citation omitted). "As a

---

[3] *See also Jones v. Cannon*, 174 F.3d 1271, 1291 (11th Cir. 1999) ("We agree . . . that failing to follow *Miranda* procedures . . . does not violate any substantive Fifth Amendment right such that a cause of action for money damages . . . is created."); *Melendez v. Mason*, No. 05-1658, 2007 U.S. Dist. LEXIS 92690, *3-4 (M.D. Fla. Dec. 18, 2007) ("[The] claim is based on interrogation, not use, and it is undisputed that the police questioning preceded the commencement of the criminal case against him. Given these circumstances, [the] Fifth Amendment claim fails as a matter of law.").

result, the Court has urged 'caution' before 'extending *Bivens* remedies into any new context.'" *Id.* (citation omitted). Whenever special factors counsel *any hesitation*, "a *Bivens* remedy will not be available." *Id.* In fact, in the last 30 years, the Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001); *see also Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (a damages remedy for a constitutional violation is not "an automatic entitlement"). "If the case is different in a meaningful way from previous *Bivens* cases decided by the Court, then the context is new." *Abbasi,* 137 S. Ct. at 1859; *see also id.* at 1864 ("Yet even a modest extension is still an extension."). Here, the Court has never extended the *Bivens* remedy to include self-incrimination violations. This context is clearly new. And an extension for such violations would be improper.

First, as the *Abbasi* Court noted, one of the main rationales for implying a damages action in *Bivens* was because under the specific facts of that case, it was "damages or nothing" for the plaintiff. *Id.* at 1863; *see also Stephens v. DHHS*, 901 F.2d 1571, 1577 (11th Cir. 1990) ("A *Bivens* action is only permitted where . . . the petitioner has no alternative means of obtaining redress . . . .") (citation omitted); *Gleason v. Malcom*, 718 F.2d 1044, 1047 (11th Cir. 1983) ("*Bivens*-type actions are somewhat extraordinary and are restricted to the vindication of the constitutional rights of an aggrieved victim only when no equally effective remedy is available."). In *Abbasi*, that was not the case: the plaintiffs had a potential *habeas* remedy in the criminal process that served as an additional reason not to extend *Bivens*. *Id.*; *see also Alvarez v. ICE*, 818 F.3d 1194, 1208-09 (11th Cir. 2016) (considering potential availability of *habeas* remedy to not extend *Bivens*), *cert. denied,* 137 S. Ct. 2321 (2017). Here too, self-incrimination

violations are not a case of "damages or nothing." An individual faced with having his statement used against him in a criminal case can use the criminal process to seek to have that statement excluded or any subsequent conviction overturned. *Cf. Rauschenberg v. Williamson*, 785 F.2d 985, 986-88 (11th Cir. 1986) (refusing to recognize *Bivens* claim for parolee alleging he was coerced into consenting to mental health treatment because remedies were available through the criminal process). That Todashev himself could not avail himself of that opportunity because he was not prosecuted is not controlling. *United States v. Stanley*, 483 U.S. 669, 683 (1987) ("It is irrelevant to a special factors analysis whether the laws currently on the books afford Stanley . . . an adequate federal remedy for his injuries.") (internal quotation marks omitted). The fact is that there are other avenues for relief for the *type* of self-incrimination claims at issue.

Second, courts have specifically refused to extend *Bivens* to coercion-based claims arising out of the criminal process: "Expanding *Bivens* in this fashion would have a chilling effect on law enforcement officers and would flood the federal courts with constitutional damage claims by the many criminal defendants who leave the criminal process convinced that they have been prosecuted and convicted unfairly." *Vennes v. An Unknown No. of Unidentified Agents*, 26 F.3d 1448, 1452 (8th Cir. 1994). Indeed, a LEXIS search for criminal defendants challenging their convictions in federal court on self-crimination grounds in the last year alone yielded over 100 results. If that sort of expansive potential for federal officer liability is to be contemplated, that is a task for Congress, not the courts. *See Abbasi,* 137 S. Ct. at 1857 ("In most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if 'the public

interest would be served' by imposing a 'new substantive legal liability.'") (quoting *Schweiker v. Chilicky*, 487 U. S. 412, 426-27 (1988)).

Third, in light of *Chavez*'s requirement that any self-incrimination violation necessarily involve the use of criminal process, whether it be a prosecutor's decision to initiate proceedings or a prosecutor's decision to elicit the alleged coerced testimony in a criminal proceeding, it is unclear what the elements of a standalone "I was coerced" claim would be. *See Alvarez*, 818 F.3d at 1211 ("The lack of a clearly defined standard by which to judge such claims, and the nature of the claim as based primarily on the credibility of each party, would likely lead to widespread litigation," and serves as an additional reason not to extend *Bivens*). That, in and of itself, is a reason not to extend the *Bivens* remedy. *See Wilkie*, 551 U.S. at 555, 557 (declining to recognize a *Bivens* claim because of the "difficulty in defining a workable cause of action," and "that reason counts against recognizing freestanding liability in a case like this").

Finally, this is not a case where Congress has been silent. It is well settled that when Congress weighs in on an issue but does not create a damages remedy, it is inappropriate for the Judiciary to imply one under *Bivens*. *See Abbasi*, 137 S. Ct. at 1862. Here, through 18 U.S.C. § 3501, Congress addressed the admissibility of confessions in criminal cases and nowhere did it create a damages remedy for coercive interrogation tactics.[4] That is an additional reason not to create a new non-statutory, constitutional damages action in these circumstances.

---

[4] Although in *Dickerson v. United States*, 530 U.S. 428, 431 (2000), the Court held that Congress lacked the authority to overrule *Miranda* as a means of criminal procedure though Section 3501, that does not undercut that Congress has weighed in on this issue and did not create a damages action for violations of the Self-Incrimination Clause.

In light of the foregoing, this Court should not be the first court in the country to recognize a *Bivens* action for self-incrimination violations. *See Baez v. Connelly*, 478 F. App'x 674, 675 (1st Cir. 2012) ("There is no authority for [the] suggestion that [an] alleged violation of [the *Miranda*] procedure violated [plaintiff's] constitutional rights or that it provides a basis for a *Bivens* claim.").

**III.    This Court Should Dismiss Count Three against TFO Savard.**

Count Three alleges Fourth Amendment excessive force and Fifth Amendment self-incrimination claims against TFO Savard under Section 1983. However, at the time of the alleged shooting, TFO Savard was a member of the FBI's Joint Terrorism Task Force and as alleged, was investigating Todashev at the FBI's request. Am. Compl. ¶¶ 32-33.[5] It is well-settled that Section 1983 does not apply to federal task force officers. *See Nelson v. Weber*, No. 16-5680, 2017 U.S. Dist. LEXIS 111742, *7 (W.D. Wash. May 19, 2017) (noting the weight of authority holding that task force officers are federal officers not subject to Section 1983); *Gaspard v. DEA Task Force*, No. 15-1802, 2016 U.S. Dist. LEXIS 59451, *17 (C.D. Cal. Apr. 4, 2016) (same); *Love v. Mosley*, No. 14-281, 2015 U.S. Dist. LEXIS 133966, *13 (E.D. Mich. Mar. 30, 2015) (same). And the Eleventh Circuit has otherwise held that "Section 1983 does not apply to federal actors acting under color of federal law." *Allen v. EEOC*, 366 F. App'x 972, 974 (11th Cir. 2010) (internal quotations omitted).

Regardless of whether brought under *Bivens* or Section 1983, this Court should still dismiss the Fourth Amendment excessive force claim against TFO Savard. "Because

---

[5] The bare allegation that TFO Savard was acting under color of state law is a legal conclusion that this Court should not credit. *See* Am. Compl. ¶ 155; *Cigna Corp.*, 605 F.3d at 1290 (when considering a motion to dismiss, the court must "eliminate any allegations in the complaint that are merely legal conclusions").

vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that

each Government-official defendant, through the official's own individual actions, has

violated the Constitution." *Iqbal*, 556 U.S. at 676. Although the amended complaint

purports to allege an excessive force claim against TFO Savard, it makes clear that SA

McFarlane, *not* TFO Savard, discharged his weapon. Am. Compl. ¶¶ 9, 85-87, 108-09. In

fact, there is no specific allegation that any other officer used any force at all, and only

Trooper Cinelli, not TFO Savard, is alleged to have been in the room with SA McFarlane

when Todashev was shot. Thus, TFO Savard cannot be held directly liable under the

Fourth Amendment and should be dismissed from Count Three. *See Kimbrough v. City of

Cocoa*, No. 05-471, 2005 U.S. Dist. LEXIS 43794, *37-38 (M.D. Fla. June 8, 2005)

(dismissing excessive force claim against officer alleged not to have used any force).[6]

**IV.    The Amended Complaint Fails to Allege a Cognizable Theory of Secondary
        Liability against SA McFarlane or TFO Savard.**

   **A.  This Court should not extend *Bivens* to include conspiracy claims.**

   As explained previously, the Supreme Court has made clear that "expanding the

*Bivens* remedy is now a 'disfavored' judicial activity," and "has urged caution before

extending *Bivens* remedies into any new context." *Abbasi,* 137 S. Ct. at 1857 (internal

quotations and citation omitted). Whenever special factors counsel *any hesitation*, "a

*Bivens* remedy will not be available." *Id.* The Supreme Court has also stated that "[i]f the

case is different in a meaningful way from previous *Bivens* cases decided by this Court,

then the context is new." *Id*. at 1859. Here, the Court has never extended the *Bivens*

---

[6] The single allegation that "[i]t also appears that there may have been more than one shooter," Am. Compl. ¶ 96, does not change this result. That allegation is speculative and conclusive, and devoid of any further supporting factual content, which is patently insufficient to state a claim against any other officer, let alone TFO Savard, who is not alleged to have been in the room when Todashev was shot. *See Iqbal*, 556 U.S. at 678 ("naked assertion[s] devoid of further factual enhancement" are insufficient to state a claim) (internal quotations and citation omitted).

remedy to include conspiracy claims.[7] This is unsurprising because *Bivens* liability is

*personal*, based upon each defendant's *own* unconstitutional conduct. *Iqbal*, 556 U.S. at

676. If a *Bivens* defendant did not violate the Constitution directly, imposing liability

because of another defendant's alleged conduct is just an attempt to resurrect vicariously

lability, which "is inapplicable to *Bivens*." *Id.*

And extending *Bivens* to include broad "conspiracy" claims where the defendant

could not, under normal pleading rules, be said to have violated the Constitution directly,

would serve no recognized deterrent purpose. The Supreme Court has emphasized that

the "core purpose" of *Bivens* is "deterring individual officers from engaging in

unconstitutional wrongdoing." *Malesko*, 534 U.S. at 74. But in any conspiracy case, that

objective will already be achieved with the potential remedy against those directly

responsible for the underlying constitutional violation. *See Stephens*, 901 F.2d at 1577

("A *Bivens* action is only permitted where . . . the petitioner has no alternative means of

obtaining redress . . . .") (citation omitted). Extending derivative liability to those not

directly responsible for the underlying violation is wholly unnecessary, creates an entire

new class of defendants, is unsanctioned by Congress, and post-*Abbasi*, is entirely

improper. *See Vanderklok*, 868 F.3d at 198-200 (extending *Bivens* to a new context is "an

---

[7] Although the Eleventh Circuit has referenced a so-called *Bivens* conspiracy claim in finding that the claim
had not been adequately alleged, it has never explicitly recognized a *Bivens* conspiracy claim as a
substantive cause of action, *see Fulwood v. BOP*, 568 F. App'x 753, 757 (11th Cir. 2014); and there is
some disagreement in the circuit courts on this issue. *See Unus v. Kane*, 565 F.3d 103, 125 n.26 (4th Cir.
2009) ("We have apparently never recognized a '*Bivens* conspiracy claim' as a substantive cause of
action."). Most recently, the Eleventh Circuit refused to recognize a *Bivens* analogue to 42 U.S.C. § 1986
whereby a *Bivens* defendant could be held liable for having knowledge of a conspiracy but failed to prevent
it. *See White v. Berger*, No. 16-11606, 2017 U.S. App. LEXIS 17854, *8-10 (11th Cir. Sept. 15, 2017). But
even if the Eleventh Circuit had explicitly recognized a *Bivens* conspiracy claim, that does not prevent this
Court from addressing the viability of any such claim post-*Abbasi*. *See, e.g.*, *Vanderklok v. United States*,
868 F.3d 189, 198-200 (3d Cir. 2017) (reevaluating the viability of First Amendment *Bivens* claim post-
*Abbasi* notwithstanding the court's prior precedents because "[o]ur past pronouncements are . . . not
controlling in the specific circumstances now at issue").

authority rarely invoked;" "[c]ourts will no longer imply rights and remedies as a matter

of course"). A *Bivens* claims must rise or fall on the plaintiff's ability to show that *each*

*individual official* sued violated the Constitution. *Iqbal*, 556 U.S. at 676. This Court

should thus decline to extend *Bivens* to conspiracy claims and dismiss Count Four.

**B.   The amended complaint fails to sufficiently plead a Section 1985(3) conspiracy.**

Count Five purports to raise a Section 1985(3) conspiracy claim against TFO

Savard. To state a Section 1985(3) claim, a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983);

*see also Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002). The second

element requires a showing of "some racial, or perhaps otherwise class-based, invidiously

discriminatory animus." *Local 610,* 463 U.S. at 829; *see also Trawinski*, 313 F.3d at 1299

("[A] claim under § 1985(3) requires the proof of invidious discriminatory intent.")

(citation omitted). Here, Plaintiff has not alleged any facts to suggest that TFO Savard

was conspiring against Todashev because of his race or any other class-based animus.

There is simply no allegation that he targeted Todashev, discriminated against him, or

attempted to prevent him from receiving equal protection under the law because of some

class-based reason. Based on the foregoing, Plaintiff cannot maintain a conspiracy claim

under Section 1985(3). *See White*, 2017 U.S. App. LEXIS 17854, at *9 (dismissing

Section 1985(3)-related claim because plaintiff did not adequately plead his treatment

was motivated by racial or other class-based animus); *Davis v. Ala. DOT*, No. 16-583, 2017 U.S. Dist. LEXIS 122763, *48-49 (M.D. Ala. Aug. 2, 2017) (same).

C.     **The amended complaint fails to sufficiently plead a conspiracy claim.**

Even if the amended complaint sufficiently asserted cognizable bases to allege conspiracy claims against SA McFarlane (under *Bivens*) and TFO Savard (under Section 1985(3)), the allegations in Counts Four and Five still fall woefully short. To prevail on a conspiracy claim, "a plaintiff must show that an agreement between two or more people . . . to violate his constitutional rights resulted in an actual violation of those rights." *AFL-CIO*, 637 F.3d at 1191. "A plaintiff claiming a conspiracy . . . must make particularized allegations that a conspiracy exists." *Briggs v. Briggs*, 245 F. App'x 934, 935 (11th Cir. 2007). "Vague and conclusory allegations that merely suggest a . . . conspiracy are insufficient to withstand a motion to dismiss." *Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873, 880 (11th Cir. 2016). "The requirement that plaintiffs allege nonconclusory facts means that plaintiffs cannot plead merely parallel conduct and allege conspiracy. Conspiracy is a legal conclusion. Rather, plaintiffs must plead evidentiary facts: who, did what, to whom (or with whom), where, and when." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 n.6 (9th Cir. 2015) (internal quotations and citation omitted); *see also Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (merely stringing together acts of individuals insufficient to allege a conspiracy); *Tracy v. Fla. Atl. Univ. Bd. of Trs.*, No. 16-80655, 2016 U.S. Dist. LEXIS 173608, *26 (S.D. Fla. Dec. 15, 2016) ("Plaintiff needs to plead his conspiracy counts with greater clarity as to who, what, where, when, and why.").

Count Four as against SA McFarlane and Count Five as against TFO Savard contain identical allegations that (1) SA McFarlane and TFO Savard conspired with the other defendants to violate Todashev's Fourth and Fifth Amendment rights; (2) they acted jointly and collectively; (3) they agreed upon a course of action; (4) their major purpose was to violate Todashev's rights; (5) each performed unspecified acts in furtherance of the conspiracy; and (6) as a result, Todashev suffered loss of constitutional rights, death, and harm. Am. Compl. ¶¶ 142-47, 152, 154-59, 164. These statements are just a boilerplate reformulation of the elements of a conspiracy. It is well-settled that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Abreu-Velez v. Bd. of Regents of the Univ. Sys. of Ga.*, 631 F. App'x 888, 890 (11th Cir. 2015) ("[S]peculative and conclusory allegations won't survive a motion to dismiss."), *cert. denied,* 136 S. Ct. 1838 (2016). This Court should dismiss these threadbare conspiracy claims. *See Holmes v. Hale*, No. 16-14712, 2017 U.S. App. LEXIS 11508, *8-9 (11th Cir. June 28, 2017) (simply alleging defendants acted "in concert" does not state a conspiracy claim).

Counts Four and Five contain the same additional allegation that was pled in the original complaint: that all four individual defendants "acted strategically to ensure that there were no witnesses to constitutional abuses that were intended toward decedent and to prevent the discovery of those abuses in the course of the investigation." Am. Compl. ¶¶ 151, 160. This threadbare contention also does not save the conspiracy claims. It is equally (if not more) plausible that the defendants asked Todashev's friend to remain outside *not* for the purpose of ensuring there were no witnesses to "cover up" some unspecified "abuses," but simply because his presence could have interfered with the

interview; Todashev might not have been as forthcoming with his friend present; and further, to protect the integrity of the investigation by preventing the friend from disclosing the information revealed during the interview to third parties or the general public, thereby potentially jeopardizing a murder investigation with suspects still at large. In light of these obvious, multiple alternative explanations, this Court should not credit the speculative assertion by Plaintiff that Todashev's friend remained outside because the defendants wanted to ensure there were no witnesses. *See Abreu-Velez*, 631 F. App'x at 890 ("[S]peculative and conclusory allegations won't survive a motion to dismiss."). Moreover, there is no case law even remotely suggesting that not allowing a third-party to observe an interview is somehow equivalent to an unconstitutional conspiracy for a later use of force. SA McFarlane and TFO Savard are entitled to qualified immunity on this aspect of the conspiracy claims.

Nor is Count Five saved by the conclusory contention that the defendants conspired to "keep secret information and evidence probative of McFarlane's wrongful acts." Am. Compl. ¶ 161. The amended complaint contains no supporting factual content as to who did what to cover up what and when. *See Tracy*, 2016 U.S. Dist. LEXIS 173608, at *26 (complaint must allege who did what, when, where, and why to sufficiently plead a conspiracy claim). Moreover, it is well-settled the separate act of allegedly covering up a Fourth Amendment violation is not itself a standalone Fourth Amendment claim, let alone a clearly established one.[8] TFO Savard is entitled to

---

[8] *See, e.g.*, *Bentz v. Cowan*, No. 13-1259, 2013 U.S. Dist. LEXIS 181240, *5 (S.D. Ill. Dec. 30, 2013) ("Plaintiff shall also be allowed to proceed on his excessive force claims, but a conspiracy to 'cover up' those acts after the fact does not amount to a constitutional violation in and of itself."); *Lang v. County of Sonoma*, No. 12-983, 2012 U.S. Dist. LEXIS 142746, *7 (N.D. Cal. Oct. 2, 2012) ("But Plaintiff cites no case law to support the proposition that a cover-up of unconstitutional conduct is properly viewed as violative of the underlying constitutional right."); *Green v. New Jersey State Police*, No. 4-7, 2006 U.S. Dist. LEXIS 55334, *13-14 (D.N.J. Aug. 9, 2006) ("Green may not bootstrap the other officers' alleged

qualified immunity on this aspect of the conspiracy claim.

Plaintiff does make one last ditch attempt to bolster his conspiracy claims by adding non-specific allegations that the defendants "[e]xerted extreme and sustained psychological pressure and physical pressure" to get Todashev to not assert "his right to terminate the interrogation," thereby forcing him "to self-incriminate himself . . . . prior to being asked to sign a *Miranda* waiver." Am. Compl. ¶¶ 148-150, 162-63. Plaintiff never explains which defendants engaged in what conduct or when. *See Tracy*, 2016 U.S. Dist. LEXIS 173608, at *26. Nor does he specify what he means by "extreme and sustained" pressure. Elsewhere, Plaintiff alleges, without any supporting factual content, that all four individual defendants agreed to use "third degree tactics to force Todashev to implicate himself in a crime." Am. Compl. ¶ 71. But again, Plaintiff never explains what that means and never describes a single so-called "third degree tactic." None of this is sufficient to put the defendants on notice of the specific claims against them. The only arguable factual allegation, though still devoid of any supporting factual content, is that the defendants constantly surveilled and interrogated Todashev. *Id.* ¶¶ 131, 148a. But even if true, SA McFarlane and TFO Savard are unaware of any case law finding a constitutional violation based on surveillance alone. And the Supreme Court and the Eleventh Circuit have both held that alleged coercive interrogation tactics do not give rise to a civil damages action when the evidence obtained was never used in a criminal proceeding. *See supra*, at 8-9. If this were the object of the alleged conspiracy, it was not

Fourth Amendment violations into a claim against Schusler by merely alleging a conspiracy to cover-up the Fourth Amendment violations after the fact."); *James v. Rednour*, No. 10-1083, 2012 U.S. Dist. LEXIS 119889, *9-10 (S.D. Ill. Aug. 24, 2012) ("Covering up the use of excessive force by other persons does not violate the Plaintiff's constitutional rights."); *Cipolla v. Hayman*, No. 10-889, 2011 U.S. Dist. LEXIS 141247, *21 (D.N.J. Dec. 8, 2011) ("[A]llegation that Defendants . . . conspired to 'cover up' the incident fails to allege any facts indicating that any of these defendants violated Plaintiff's constitutional rights.").

an intent to violate an actionable constitutional right, let alone a clearly established one. Further, SA McFarlane and TFO Savard are unaware of any case law even remotely suggesting that an alleged conspiracy to violate *Miranda* is somehow equivalent to an unconstitutional conspiracy for a later use of force.[9]

Counts Four and Five do not contain any other allegations of fact, let alone any specific, non-conclusory allegations, supporting a conspiracy. Having failed to allege a conspiracy to violate a constitutional right, let alone a clearly established one, this Court should dismiss Counts Four and Five against SA McFarlane and TFO Savard.

*            *            *

What has become obvious is that Plaintiff is trying to implicate every officer involved in the investigation of Todashev to hold them vicariously liable for a single officer's alleged use of force. But vicarious liability is inapplicable to *Bivens* and Section 1983 actions. *Iqbal*, 556 U.S. at 676. To overcome that limitation, Plaintiff first alleged that the defendants conspired to provoke Todashev to justify that use of force in violation of the Fourth Amendment, but that claim was foreclosed by Supreme Court precedent. Now, Plaintiff alleges that the defendants conspired to coercively interrogate Todashev in violation of the Fifth Amendment. Precedent forecloses that claim as well. And as this is Plaintiff's second attempt to assert conspiracy claims, this Court should not permit him a third bite at the apple and dismiss any and all conspiracy claims with prejudice. *Caldwell v. Compass Entm't Grp., LLC*, No. 14-1701, 2015 U.S. Dist. LEXIS 189577, *10 (M.D.

---

[9] Indeed, if a prior Fourth Amendment violation that provokes a use of force is insufficient to state a claim for excessive force, *see County of Los Angeles v. Mendez*, 137 S. Ct. 1539 (2017) (holding that provoking a person with the intent to justify a later use of force does not give rise to a Fourth Amendment violation); then there is no reason to believe an alleged prior self-incrimination violation is sufficient to state the same. SA McFarlane and TFO Savard are unaware of any case law suggesting otherwise.

Fla. Feb. 23, 2015) (dismissing conspiracy claim with prejudice after multiple failed attempts to sufficiently plead a conspiracy) (Mendoza, J.).

**D.      The amended complaint fails to sufficiently plead a failure-to-intervene claim.**

Though not tied to any count, the amended complaint, which itself contains more than 167 paragraphs, has five sentences referencing a failure to intervene. Am. Compl. ¶¶ 88-89, 97-98, 130. Three of those sentences simply recite that each defendant "failed to intervene to prevent the violation of Todashev's . . . rights by [the other defendants], though able." *Id.* ¶ 97-98, 130. This is just another "[t]hreadbare recital[] of the elements of a cause of action," which does not suffice to do anything, let alone state a clearly established constitutional claim. *Iqbal*, 556 U.S. at 678. Courts routinely reject such allegations devoid of any factual enhancement as insufficient.[10] Moreover, it is unclear from these allegations what unlawful conduct SA McFarlane and TFO Savard failed to prevent, when or where it occurred, or which defendant engaged in the alleged unlawful conduct. Without such allegations, the amended complaint fails to place them on sufficient notice of the claims against them. *See Twombly*, 550 U.S. at 555 (to state a claim for relief, a plaintiff must allege facts with enough allegations to give defendants fair notice of the claims against them).

---

[10] *See, e.g.*, *Savannah v. Collins*, 547 F. App'x 874, 877 (10th Cir. 2013) (because allegation that officer failed to intervene is a legal conclusion and complaint does not otherwise allege specific facts indicating there was an opportunity to intervene, "[the plaintiff] should not have the opportunity to continue with litigation against [the non-shooting officer]"); *Perez v. United States*, 103 F. Supp. 3d 1180, 1213 (S.D. Cal. 2015) (dismissing failure-to-intervene claim, noting that "Court need not accept as true the conclusory allegation that a sufficient amount of time elapsed . . . to intervene and stop the shooting") (internal quotations omitted); *Boddie v. City of New York*, No. 15-4275, 2016 U.S. Dist. LEXIS 50248, *7 (S.D.N.Y. Apr. 13, 2016) (where complaint baldly alleges defendants failed to intervene and report conduct, "[t]hese are precisely the types of conclusory allegations that, without factual support, must be dismissed").

If the claim is that they failed to prevent a self-incrimination violation, then it fails for two reasons. First, because the amended complaint fails to allege an actionable self-incrimination violation, any failure to intervene to prevent that conduct fails. Second, neither the Supreme Court nor the Eleventh Circuit has held that an officer has a duty to intervene outside the excessive-force context, let alone for self-incrimination violations. *Cf. Jones*, 174 F.3d at 1286 ("There is no controlling authority clearly establishing that once a police officer knows another officer has fabricated a confession . . . that police officer has a constitutional duty to intervene to stop the other officer's conduct."); *Lepone-Dempsey v. Carroll Cty. Comm'rs*, 159 F. App'x 916, 920 (11th Cir. 2005) ("Our precedent suggests . . . that the duty to intervene does not necessarily extend to every conceivable situation involving a constitutional violation."). Thus, SA McFarlane and TFO Savard are entitled to qualified immunity on any such claim. *See de Veloz v. Miami-Dade Cty.*, No. 16-23925, 255 F. Supp. 3d 1222, 2017 U.S. Dist. LEXIS 87778, *22 (S.D. Fla. June 8, 2017) (finding it "doubtful" the Eleventh Circuit recognizes failure to intervene claim outside excessive-force context and the lack of authority is what "precisely" begs for application of qualified immunity).

 If the claim is that SA McFarlane failed to prevent an excessive use of force, then it too fails. Indeed, because the amended complaint fails to allege that any other officer used any force at all, there is nothing for SA McFarlane to have prevented. And there is no basis to hold him liable under a failure-to-intervene theory for failing to prevent his own use of force. *See Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341-42 (11th Cir. 2007) (an officer is only liable for failing to intervene "to protect the victim of *another officer's* use of excessive force") (emphasis added).

That just leaves the one remaining allegation against TFO Savard, that he, "just outside, also could have intervened but did not." Am. Compl. ¶ 89. That allegation is not only conclusory and speculative, with no supporting factual content, it is also belied by the few facts alleged as well as the law. Plaintiff contends that two volleys of shots occurred within a matter of seconds of each other, *Id.* ¶¶ 86-87, and admits that TFO Savard was not in the room to observe either. Plaintiff appears to acknowledge that no officer had an opportunity to prevent the first volley, limiting his allegation to whether the officers could have prevented the second volley. *Id.* ¶¶ 88-89. Although an officer might have a duty to intervene to prevent the use of excessive force by another officer depending on the facts and circumstances of the case, "it must also be true that the non-intervening officer was in a position to intervene." *Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008); *see also Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000). The Eleventh Circuit has recently stated the obvious: an officer not in the room is in no position to intervene. *See Militello v. Sheriff of the Broward Sheriff's Office*, 684 F. App'x 809, 813 (11th Cir. 2017) ("[Plaintiff] has not pointed us to any case (nor have we ourselves found one) . . . in which we held that an officer was in a position to intervene against the use of excessive force where he or she was unable to observe a fellow officer's use of force."); *see also Carr v. Tatangelo*, 338 F.3d 1259, 1270 n.22 (11th Cir. 2003) (holding that where officer "did not participate in the shooting," and "was unaware of the rapidly developing situation . . . which gave him no time to act from across the street," he is entitled to qualified immunity on failure-to-intervene claim), *as amended* (Sept. 29, 2003). Here, TFO Savard was not in the room. And Plaintiff never explains how TFO Savard *could* have done anything to stop the second volley of shots

from outside the apartment when Plaintiff alleges that the shots occurred in a matter of seconds. Indeed, it is well-settled an officer has no opportunity to intervene to stop a sudden and unexpected use of force – particularly one that occurred outside his direct and immediate presence. *See Riley v. Newton*, 94 F.3d 632, 635 (11th Cir. 1996) (defendant had no reason to expect fellow officer would discharge weapon and thus, the "obligation to take steps to protect [plaintiff] never arose").[11] Absent any precedent showing it was clearly established that TFO Savard was required to do the impossible – prevent a shooting he did not observe – he is entitled to qualified immunity on this claim.

For these reasons, this Court should dismiss any failure-to-intervene claim against SA McFarlane and TFO Savard.

## CONCLUSION

With respect to the Individual Federal Defendants, this case should proceed past the motion to dismiss phase on the single Fourth Amendment excessive force claim against the officer alleged to have discharged his weapon: SA McFarlane. TFO Savard should be dismissed from this case altogether. And as this is the second attempt by Plaintiff to plead colorable claims against TFO Savard, this Court should dismiss the claims against him, as well as all conspiracy claims, with prejudice. This Court should grant the motion to dismiss along these lines so that this case can proceed accordingly.

This 20th day of November, 2017.          Respectfully submitted,

                                          CHAD A. READLER
                                          Principal Deputy Assistant Attorney
                                          General, Civil Division

---

[11] *See also Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n.3 (1st Cir. 1990) (complaint fails to sufficiently allege failure to intervene where incident is alleged to have occurred quickly and over in a matter of seconds); *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) ("The three blows were struck in such rapid succession that [Defendant] had no realistic opportunity to attempt to prevent them. This was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator.").

W. STEPHEN MULDROW
Acting United States Attorney

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil
Division

MARY HAMPTON MASON
Senior Trial Counsel, Torts Branch, Civil
Division

/s/ Siegmund F. Fuchs
SIEGMUND F. FUCHS
Trial Attorney, Torts Branch, Civil Division
U.S. Department of Justice
Ben Franklin Station
P.O. Box 7146
Washington, D.C. 20044-7146
Tel (202) 616-4322; Fax (202) 616-4314
siegmund.f.fuchs@usdoj.gov

Attorneys for the Individual Federal
Defendants

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 20, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to the following CM/ECF participants:

James V. Cook, Esq.
Thania Diaz Clevenger, Esq.
Tark Aouadi, Esq.
Daniel W. Eckhart, Esq.

/s/ Siegmund F. Fuchs
SIEGMUND F. FUCHS
Trial Attorney, Torts Branch, Civil Division
U.S. Department of Justice