# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ESTATE OF IBRAGIM TODASHEV, by
HASSAN SHIBLY, as Personal Representative
of the ESTATE OF IBRAGIM TODASHEV,
and for the Survivors, ABDULBAKI
TODASHEVE, Father, and ZULLA
TODASHEVA, Mother.

            Plaintiffs,

v.                                   CASE NO. 6:17-cv-0919-CEM-DCI

UNITED STATES OF AMERICA and
AARON McFARLANE, CHRISTOPHER
JOHN SAVARD, CURTIS CINELLI, and
JOEL GAGNE, individually,

            Defendants.

_____/

## INDIVIDUAL FEDERAL DEFENDANT AARON McFARLANE'S
## MOTION FOR LEAVE TO FILE EXHIBITS UNDER SEAL

      COMES NOW Individual Federal Defendant Aaron McFarlane, through the

undersigned counsel and pursuant to Local Rule 1.09, hereby requests leave to file five

un-redacted photographs under seal, and in support thereof, submits the following.

### I.      BACKGROUND

      On January 22, 2018, this Court granted Plaintiff's motion for leave to file a

second amended complaint. (ECF 56). The second amended complaint contains

allegations that Individual Federal Defendant Aaron McFarlane, a Special Agent for the

Federal Bureau of Investigation, used excessive force when he discharged his weapon

and shot and killed the decedent, Ibrigim Todashev, on May 22, 2013. In response to the

second amended complaint, SA McFarlane has filed concurrently herewith a motion for

pre-discovery summary judgment under Rule 56 of the Federal Rules of Civil Procedure raising the affirmative defense of qualified immunity. That motion includes as exhibits five partially redacted death-scene photographs of Todashev's body. Through the instant motion, SA McFarlane requests leave to file these photographs in un-redacted form under seal, with the partially redacted versions remaining on the public docket.

## II.     LEGAL ANALYSIS

It is well established that a court has "supervisory power over its own records and files." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978). Under Local Rule 1.09(a), a motion to seal must include (i) an identification and description of each item proposed for sealing; (ii) the reason that filing each item is necessary; (iii) the reason that sealing each item is necessary; (iv) the reason that a means other than sealing is unavailable or unsatisfactory to preserve the interest advanced by the movant in support of the seal; (v) a statement of the proposed duration of the seal; and (vi) a memorandum of legal authority supporting the seal. *See* Local Rule 1.09(a). Moreover, the Eleventh Circuit has held:

> In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

*Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007) (citations omitted). Overcoming the right of access requires a showing of good cause. *Id.* at 1245 (citation omitted). "Good cause is established by the moving party when disclosure will cause the

party to suffer a clearly defined and serious injury." *NXP B.V. v. Blackberry Ltd.*, No. 12-498, 2014 U.S. Dist. LEXIS 113591, *6 (M.D. Fla. Aug. 15, 2014) (citation omitted).

Here, the five graphic death-scene photographs were taken inside Todashev's apartment shortly after the shooting, and each depicts his body lying on the floor. Filing of the death-scene photographs are necessary to support SA McFarlane's motion for pre-discovery summary judgment. In that motion, SA McFarlane explains that prior to discharging his weapon, the officers hid a sword from Todashev's reach because his demeanor and behavior changed and they were concerned for their safety. Also, just prior to the shooting, Todashev violently threw a white table at SA McFarlane's head and then grabbed a red pole and aggressively charged the officers. These death-scene photographs depict the hidden sword, the flipped white table, the red pole lying under Todashev's body, as well as the fact that Todashev fell facing the officers and away from the front door – thereby refuting any notion that Todashev was attempting to leave the apartment when he was shot. Thus, these photographs establish the absence of any genuine issue of material fact with respect to SA McFarlane's explanation as to how and why he used force on the night of the shooting.

Filing these un-redacted death-scene photographs under seal is also necessary. First, they are graphic and gruesome. Courts often grant requests to file similar graphic photographs under seal. *See, e.g.*, *Knight v. City of Fayetteville*, 234 F. Supp. 3d 669, 684 (E.D.N.C. 2017) ("Autopsy photos . . . shall remain filed under seal."); *In re Katherine A. Hoover's Residence*, No. 10-09, 2010 U.S. Dist. LEXIS 143624, *7 (N.D.W.V. Oct. 28, 2010) ("The autopsy photos shall remain sealed.").

Second, the death-scene photographs run the risk of tainting the jury venire and prejudicing the right to a fair trial. The Supreme Court has long held that there is an overriding public interest in having trials based on evidence presented in court, not pre-trial publicity. *See Patterson v. Colorado*, 205 U.S. 454, 462 (1907) ("The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print."). This maxim holds true in the civil context as well. *See Latiolais v. Whitley*, 93 F.3d 205, 207 (5th Cir. 1996) ("There is a constitutional right to a fair trial in a civil case.") (citing *Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir.1993); *Bailey v. Systems Innovation, Inc.*, 852 F.2d 93, 98 (3d Cir.1988)). These core principles underlie a district court's wide discretion in examining potential jurors for potential bias arising out of pretrial publicity. *Cf. Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991).

There is certainly no question the shooting at issue has garnered a lot of attention.[1] A google search for "Ibragim Todashev shooting" yields thousands of hits. It has been the subject of a podcast by This American Life.[2] It has been publicly "slammed" by the head of the Republic of Chechnya.[3] It has fueled conspiracy theories and speculation that FBI "bandits" killed Todashev "execution" style because he supposedly knew too much.[4] And bloody photographs of Todashev's apartment (after his body was

---

[1] *See, e.g.*, http://america.aljazeera.com/articles/2014/3/25/how-did-ibragim-todashevdie.html ("Todashev's killing prompted an outpouring of public interest and skepticism, particularly from his family, who alleged wrongdoing.") (last accessed 02/05/2018).

[2] *See, e.g.*, https://www.thisamericanlife.org/519/dead-men-tell-no-tales (last accessed 02/05/2018).

[3] *See, e.g.*, https://sputniknews.com/russia/20130527181374566-Chechen-Leader-Slams-Killing-of-Tsarnaev-Affiliate/ (last accessed 02/05/2018).

[4] *See, e.g.*, https://www.washingtonpost.com/world/europe/father-of-chechen-killed-in-florida-says-fbi-murdered-him/2013/05/30/f3d7f80c-c936-11e2-9245-773c0123c027_story.html?utm_term=.999e8e654a14 (last accessed 02/05/2018).

- 4 -

removed) have already been used to spread anger and misinformation about the shooting on the Twitter account, Justice for Ibrahim, which includes tweets that refer to the shooting as an "unexplained FBI assassination."[5] Filing of the death-scene photographs on the public docket at this time only increases the risk of further pretrial publicity that could negatively influence a potential jury pool and prejudice the right to a fair trial. This Court should avoid that risk if possible, particularly when partially redacted photographs will be available on the public docket for review.

Third, because this case involves the shooting death of a Muslim man by federal law enforcement, the death-scene photographs run the risk of being used as propaganda to create either anti-American or anti-Muslim sentiment, or both. There is no question that courts should consider such potential risks in determining whether to protect graphic death-scene and similar photographs from public disclosure. *See Ctr. for Constitutional Rights v. CIA*, 765 F.3d 161 (2d Cir. 2014); *Judicial Watch, Inc. v. DOD*, 715 F.3d 937 (D.C. Cir. 2013). In both of these cases, the government sought to prevent the disclosure of photographs because of the potential risk for retaliation. While the government also relied, in part, on an Executive Order not at issue here, the existence of that Executive Order just goes to the *weight* of the interest involved in those cases. Here, even in the absence of an Executive Order, the risk of retaliation remains high. Indeed, the very reason the identities of the agents were redacted in the Florida Attorney General's report on the shooting was because of credible threats to those involved in the shooting.[6]

---

[5] *See, e.g.,* https://twitter.com/ibragim_6 (Tweets dated July 27, 2013, and July 9, 2013) (last accessed 02/05/2018).

[6] *See, e.g.*, http://www.wbur.org/news/2014/01/14/todashev-fatal-fbi-shooting ("We have received credible threat reporting against anyone that was involved in this.") (last accessed 02/05/2018); https://info.publicintelligence.net/FL-TodashevReport.pdf, at 1 ("Due to safety concerns and circumstances

Although the identities of the officers are now public, the possibility of unnecessarily inflaming tension over this shooting by the release of graphic photographs remains. And courts routinely grant motions for leave to file exhibits under seal in other contexts to protect individuals from retaliation.[7]

There is no means other than sealing to allow this Court to review the death-scene photographs in un-redacted form. The photographs are necessary for this Court to evaluate the motion for pre-discovery summary judgment and for this Court to be able to view the death-scene photographs in un-redacted form. But is *not* necessary for those same un-redacted photographs to appear on the public docket at this time. Although there is a general public interest in accessing court documents, *see Romero*, 480 F.3d at 1246, that interest is more than satisfied here with the filing of partially redacted versions on the public docket along with descriptions of the death-scene photographs in the filing papers.

Finally, pursuant to Local Rule 1.09(c), the presumptive sealing duration is one year, subject to renewal, and SA McFarlane sees no reason to ask for a longer period at this time. At the very least, these death-scene photographs should remain under seal until this Court rules on the motion for pre-discovery summary judgment. If the one-year presumptive deadline under Local Rule 1.09(c) approaches before this Court rules on the

---

surrounding open and ongoing investigations of criminal cases, all references to this FBI Special Agent will be made by the use of the title FBI Agent throughout the following narration.") (last accessed 02/05/2018).

[7] *See, e.g.*, *United States v. Bus. of Custer Battlefield Museum and Store*, 658 F.3d 1188, 1195 n.5 (9th Cir. 2011) (recognizing that "the need to protect the identities and safety of confidential informants" and "the need to protect an ongoing investigation" may require redaction of warrant materials, post-indictment, or sealing them entirely); *Goff v. Graves*, 362 F.3d 543, 550 (8th Cir. 2004) (sealing documents in inmate civil litigation in order to protect confidential informants from retaliation); *United States v. Wright*, 343 F.3d 849, 858 (6th Cir. 2003) (sealing indictment to protect confidential informant); *United States v. Yousef*, 327 F.3d 56, 168 (2d Cir. 2003) (sealing documents to protect confidential informants and to protect government investigatory methods and how government responds to terrorist threats); *United States v. Hickey*, 767 F.2d 705, 706, 708-09 (10th Cir. 1985) (sealing criminal defendant's plea bargain in order to protect his relocation in witness protection program). *In re Search of 1638 E. 2nd St.*, 993 F.2d 773 (10th Cir. 1993) (denying a motion to unseal an informant's affidavit to protect the informant from retaliation).

motion for pre-discovery summary judgment, SA McFarlane will file a motion to extend the duration of the sealing, if necessary.

Turning to the Eleventh Circuit factors and as stated previously, there is a significant risk of retaliation if the death-scene photographs are made public, particularly given the credible and reliable threats made against the officers involved. As also stated previously, there is no real alternative to filing the un-redacted death-scene photographs under seal – though partially redacted versions will remain on the public docket. Moreover, it is important to note that the motion for pre-discovery summary judgment is based on the affirmative defense of qualified immunity. The Supreme Court has repeatedly held that lower courts must resolve the threshold legal question of qualified immunity *before* subjecting government officials to discovery.[8] In fact, the Court has "stressed the importance of resolving immunity questions at the *earliest* possible stage in litigation." *Hunter*, 502 U.S. at 227 (emphasis added). No discovery has occurred yet in this case. SA McFarlane should not be required to place on the public docket graphic death-scene photographs where even a minimal risk of retaliation and jury pool taint exists simply to hold Plaintiff to his burden of overcoming the threshold defense of qualified immunity at this early stage.

### III.    CONCLUSION

For these reasons, SA McFarlane respectfully requests this Court grant the motion for leave to file the aforementioned exhibits under seal.

---

[8] *See, e.g.*, A*shcroft v. Iqbal,* 556 U.S. 662, 685 (2009); *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009); *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

## IV.    LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), undersigned counsel certifies that he conferred

with all counsel. Defendants do not oppose this motion. Plaintiff opposes this motion.

This 5th day of February 2018.                    Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General, Civil
Division

MARIA CHAPA LOPEZ
United States Attorney

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil
Division

MARY HAMPTON MASON
Senior Trial Counsel, Torts Branch, Civil
Division

/s/ Siegmund F. Fuchs
SIEGMUND F. FUCHS
Trial Attorney, Torts Branch, Civil Division
U.S. Department of Justice
Ben Franklin Station
P.O. Box 7146
Washington, D.C.  20044-7146
Tel (202) 616-4322; Fax (202) 616-4314
siegmund.f.fuchs@usdoj.gov

Attorneys for the Individual Federal
Defendants

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 5, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to the following CM/ECF participants:

James V. Cook, Esq.
Thania Diaz Clevenger, Esq.
Tark Aouadi, Esq.
Daniel W. Eckhart, Esq.
David J. Officer, Esq.
Gregory P. Benoit, Esq.
Ralph E. Hopkins, Esq.
Richard J. Rafferty, Esq.

/s/ Siegmund F. Fuchs
SIEGMUND F. FUCHS
Trial Attorney, Torts Branch, Civil Division
U.S. Department of Justice