UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ESTATE OF IBRAGIM TODASHEV,**

        **Plaintiff,**

**v.**                               **Case No:  6:17-cv-919-Orl-41GJK**

**UNITED STATES OF AMERICA,**
**AARON MCFARLANE,**
**CHRISTOPHER JOHN SAVARD,**
**CURTIS CINELLI and JOEL GAGNE,**

        **Defendants.**

_____/

## ORDER

THIS CAUSE is before the Court on the Individual Federal Defendants' Motion to Dismiss (Doc. 59), Defendants Curtis Cinelli and Joel Gagne's Motion to Dismiss (Doc. 63), and Plaintiff's omnibus Response (Doc. 68). Also before the Court is the Government's Motion to Dismiss (Doc. 60) and Plaintiff's Response (Doc. 69) as well as Plaintiff's Objections (Doc. 80) to the April 25, 2018 Order (Doc. 79) issued by United States Magistrate Judge Gregory J. Kelly and the Government's Response (Doc. 83). Finally, this cause is also before the Court on Individual Federal Defendant Aaron McFarlane's Motion for Pre-Discovery Summary Judgment (Doc. 61) and Plaintiff's Response (Doc. 67). For the reasons stated herein, the motions to dismiss will be granted, Plaintiff's Objections will be overruled, and McFarlane's motion for summary judgment will be granted.

## I.    BACKGROUND

This suit arises out of the shooting of Ibragim Todashev on May 22, 2013, which resulted in his death. Plaintiff asserts that the Federal Bureau of Investigations ("FBI") became interested

in Todashev based on his association with Tamerlan Tsarnaev, one of the Boston Marathon bombers. (Second Am. Compl., Doc. 48, ¶ 27). Special Agent Aaron McFarlane of the FBI and Task Force Officer for the FBI's Joint Terrorism Task Force Christopher Savard were assigned to determine whether Todashev had information about the bombings. (*Id.* ¶¶ 31, 33–34). The Massachusetts State Police were also interested in asking Todashev about a triple homicide that they believed Tsarnaev may have committed in Waltham, Massachusetts. (*Id.* ¶¶ 29, 70). Massachusetts State Police Troopers Joel Gagne and Curtis Cinelli were the individuals investigating the triple homicide. (*Id.* ¶¶ 69–70).

Todashev was questioned by the FBI on April 21, 2013. (*Id.* ¶¶ 36, 38). He was subsequently summoned to the Orlando Police Department on April 22, 2013. (*Id.* ¶ 44). On May 15, 2013, Savard asked Todashev to come to the Orlando Police Department for questioning and Todashev complied. (*Id.* ¶ 53). On May 21, 2013, Savard contacted Todashev to arrange one last interview. (*Id.* ¶ 68). The interview would be held at Todashev's apartment and Savard, McFarlane, Gagne, and Cinelli (collectively, "the Individual Defendants") would all be there. (*Id.* ¶¶ 69, 72).

The interview began at approximately 7:00 p.m. on May 21, 2013. (*Id.* ¶ 76). Todashev was accompanied by a friend, but the friend was instructed to remain outside of the apartment with Savard during the interview. (*Id.* ¶¶ 73, 79). McFarlane, Gagne, and Cinelli questioned Todashev for over four hours. (*Id.* ¶ 82). Around 11:00 p.m., Savard ordered Todashev's friend to leave the apartment complex. (*Id.* ¶ 80). Around midnight, Gagne exited the apartment, stating that he was going to call the district attorney. (*Id.* ¶ 86). Soon after, while standing outside the apartment, Gagne and Savard heard a volley of shots from inside the apartment followed by more shots a few seconds later. (*Id.* ¶¶ 87–88). When Gagne and Savard entered the apartment, they saw Todashev

dead on the floor. (*Id.* ¶ 89). Plaintiff alleges that McFarlane unlawfully shot and killed Todashev. (*Id.* ¶¶ 9, 90, 95, 97).

Plaintiff, Hassan Shibly, filed this suit as the personal representative for the Estate of Ibragim Todashev and Todashev's survivors—his parents, Abdulbaki Todasheve and Zulla Todasheva. On December 29, 2017, Plaintiff filed the Second Amended Complaint ("SAC"), bringing seven Counts against the Government and the Individual Defendants. The Government and the Individual Defendants have filed motions to dismiss the claims brought against them. Additionally, McFarlane filed a motion for summary judgment as to the excessive force claim brought against him. In responding to McFarlane's motion for summary judgment, Plaintiff requested additional discovery pursuant to Federal Rule of Civil Procedure 56(d). (Doc. 67 at 23– 24). Shortly thereafter, the Individual Defendants filed an Unopposed Motion for a Preliminary Pretrial Conference (Doc. 70), wherein they requested a stay of discovery until the Court ruled on the pending motions to dismiss and for summary judgment. Judge Kelly entered an Order denying Plaintiff's request for additional discovery and staying discovery until the Court ruled on the relevant motions. (Apr. 25, 2018 Order, Doc. 79, at 8). Plaintiff subsequently filed Objections (Doc. 80) to Judge Kelly's Order. The Court will address the parties' motions to dismiss, Plaintiff's Objections to Judge Kelly's Order, and McFarlane's motion for summary judgment in turn.

## II.   MOTIONS TO DISMISS

### A.   Legal Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6),

a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Additionally, a complaint may be subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. "Attacks on subject matter jurisdiction under [Rule] 12(b)(1) come in two forms: 'facial attacks' and 'factual attacks.'" *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990)). The present case involves a factual attack. In other words, Defendant "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Lawrence*, 919 F.2d at 1529 (quotation omitted). On a factual attack, courts may consider "matters outside the pleadings, such as testimony and affidavits," *id.* at 1529 (quotation omitted), weigh the evidence, and make findings of fact, as long as "the facts necessary to sustain jurisdiction do not implicate the merits of [the] plaintiff's cause of action," *Garcia*, 104 F.3d at 1261. In such a case, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence*, 919 F.2d at 1529 (quotation omitted).

### B.      Analysis

#### 1.      *Negligent Hiring, Supervision, and Retention*

Count I asserts a claim against the Government for wrongful death and negligent hiring, supervision, and retention pursuant to the Federal Tort Claims Act ("FTCA"). Plaintiff alleges that prior to joining the FBI, McFarlane had a "blemished career as an Oakland, California, police officer." (Doc. 48 ¶ 11). Plaintiff asserts that McFarlane was the subject of two brutality lawsuits and multiple internal affairs investigations. (*Id.* ¶ 12). Plaintiff also contends that McFarlane testified as a defense witness in a criminal case (the "Riders Case"), which charged Oakland police officers with engaging in illegitimate police practices—including the use of violence, falsely arresting citizens, and planting evidence. (*Id.* ¶¶ 13–14). McFarlane was purportedly charged with filing false police reports to corroborate the other Oakland police officers' versions of the events. (*Id.* ¶ 15). According to Plaintiff, when McFarlane was questioned about falsifying police reports in the Riders Case, he invoked his Fifth Amendment privilege. (*Id.* ¶ 17). Plaintiff alleges that "[n]o substantial background vetting on McFarlane's questionable links with the Riders [Case]" was ever conducted by the FBI and that McFarlane was hired by the FBI "because of his known unscrupulous methods and willingness to work outside the law." (*Id.* ¶¶ 21, 25).

The Government argues, *inter alia*, that this Court lacks subject matter jurisdiction over Plaintiff's claim for negligent hiring, supervision, and retention. Specifically, the Government avers that Plaintiff's claim is barred by the discretionary function exception to the FTCA. As an initial matter, Plaintiff disagrees with the Government as to the standard of review that applies to the Government's factual attack on subject matter jurisdiction. Plaintiff argues that because the jurisdictional basis for the claim is intertwined with the merits, the Court must take all facts and inferences in favor of Plaintiff. But "[h]ere, jurisdiction is not intertwined with the merits of

Plaintiff's claims because the FTCA governs the subject-matter jurisdiction of the Court, and Plaintiff's substantive claims are based on [Florida] negligence law." *Brons v. United States*, No. 1:14-cv-00864-WSD, 2015 WL 630433, at *2 (N.D. Ga. Feb. 12, 2015) (citing *Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1170 (11th Cir. 2011)). Therefore, "the Court is not required to view the facts in a light favorable to the plaintiff, or draw all inferences in plaintiff's favor, as it would under Rule 12(b)(6) or Rule 56, and the Court is free to independently weight the facts." *Id.* However, even viewing the facts in the light most favorable to Plaintiff, the Court concludes that the discretionary function exception bars Plaintiff's negligent hiring claim.

"The discretionary function exception to the FTCA bars a claim predicated on an act or omission involving 'the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" *Martinez v. Shulkin*, No. 8:17-cv-1671-T-23AEP, 2018 WL 1121931, at *2 (M.D. Fla. Mar. 1, 2018) (quoting 28 U.S.C. § 2680(a)). "In determining if the 'discretionary function' exception applies, the Court evaluates whether the federal employee's actions were (1) discretionary in nature, and (2) based on considerations of public policy." *Brons*, 2015 WL 630433, at *4 (citing *Cosby v. U.S. Marshals Serv.*, 520 F. App'x 819, 820 (11th Cir. 2013)). "The first prong of the 'discretionary function' exception is met unless 'a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow.'" *Id.* (quoting *Cosby*, 520 F. App'x at 820). "In the second prong, 'the focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.'" *Id.* (quoting *Cosby*, 520 F. App'x at 820); *see also Martinez*, 2018 WL 1121931, at *2 (noting that for

the second prong to be satisfied, the judgment or choice at issue "must implicate public policy—the decision [must be] 'grounded in social, economic, and political policy.'" (citing *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988)).

"Courts have recognized [that] 'it is settled law that the federal government has the unquestioned right to choose its own employees and is therefore not liable for acts done by it in the exercise of this right.'" *Tomkiel v. United States*, No. 8:14-cv-2758-T-27TBM, 2016 WL 3212088, at *3 (M.D. Fla. June 7, 2016) (quoting *Radford v. United States*, 264 F.2d 709, 710 (5th Cir. 1959), and collecting cases);[1] *see also Brons*, 2015 WL 630433, at *4 (stating that "[c]ourts have consistently held that governmental action regarding employment and termination are an exercise of policy judgment and fall within the discretionary function exception to the FTCA's waiver of sovereign immunity" and citing cases for support). Accordingly, where a plaintiff brings a claim challenging the government's purportedly negligent hiring, supervision, and retention of a federal employee, the discretionary function exception generally applies, and dismissal of the plaintiff's claim is warranted. *Martinez*, 2018 WL 1121931, at *2.[2]

The Court acknowledges Plaintiff's allegations that some FBI "regulations relating to hiring, supervision, and retention involve discretionary functions, but those that implicate fitness do not;" that the Government violated "an operational duty to screen unfit candidates and to monitor and terminate abusive agents;" and that "[t]hese are functions that permit no exercise of

---

[1] Cases decided by the Fifth Circuit prior to October 1, 1981, are binding on this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

[2] Plaintiff faults the Government for relying on non-Eleventh Circuit cases in arguing that the discretionary function exception applies here, but the Eleventh Circuit has not directly addressed whether claims brought against the United States regarding employment and termination decisions fall within the discretionary function exception to the FTCA's waiver of sovereign immunity. *Brons*, 2015 WL 630433, at *4 & n.3. Moreover, the above-quoted case, *Radford*, 264 F.2d at 710, constitutes binding precedent.

judgment or choice." (Doc. 48 ¶¶ 22–24). However, the Court is not required to accept these conclusory allegations as true. Without more, these allegations fail to persuade the Court that the general principle that negligent hiring claims cannot be brought against the United States does not apply here. *See Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995) ("Permitting FTCA claims involving negligent hiring would require this court to engage in the type of judicial second-guessing that Congress intended to avoid."); *cf. Brons*, 2015 WL 630433, at *4–5 (denying the United States' motion to dismiss the negligent hiring claim brought against it where the plaintiff alleged that the United States hired a physician to work at a federal prison despite knowing that the physician had a history of sexually assaulting inmates at the prisons he previously worked at). Because Plaintiff's contrary arguments fail to convince the Court that his negligent hiring claim falls outside the discretionary function exception, his negligent hiring claim as set forth in Count I will be dismissed.

2.     *Fourth Amendment Violations: Unlawful Seizure and Excessive Force*

Count II asserts a *Bivens* claim against McFarlane and Savard for unlawful seizure and excessive force, and Count III asserts an unlawful seizure claim against Gagne, Cinelli, and Savard pursuant to § 1983. The Individual Defendants argue that Plaintiff has failed to sufficiently allege an unlawful seizure in violation of the Fourth Amendment. "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement . . . through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (emphasis omitted) (quotation omitted). Plaintiff has failed to state a claim for an unlawful seizure against the Individual Defendants. Plaintiff repeatedly alleges that Todashev was not free to leave, that he was interrogated for four hours, and that Todashev was "*effectively* seized." (Doc.

48 ¶¶ 77, 82, 140–41, 153–54, 158–59, 170–71, 184–85 (emphasis added)). Such conclusory allegations are insufficient to plausibly establish that Todashev was unlawfully seized in violation of his Fourth Amendment rights. Additionally, Plaintiff's allegation that McFarlane, Gagne, and Cinelli followed Todashev "everywhere he went in the apartment, even following him into the bathroom and watching him as he urinated," (*id.* ¶ 78), still fails to demonstrate that the Individual Defendants terminated or restrained Todashev's freedom of movement. *See United States v. Opoku*, 210 F. App'x 848, 852 (11th Cir. 2006) (concluding that a reasonable person in the defendant's position "would not have felt that his freedom of movement was so restricted that he was not free to leave" where the agents always followed him or kept him in sight as a safety precaution). Accordingly, as to Plaintiff's unlawful seizure claims, the SAC is devoid of sufficient facts to state a claim for relief that is plausible on its face.

As noted above, Plaintiff also brings a claim for excessive force against McFarlane and Savard. Savard argues that the excessive force claim brought against him is due to be dismissed because there are no allegations that he used force. (Doc. 59 at 13). The Court agrees. To the extent Plaintiff attempts to bring an excessive force claim against Savard in Counts II and III, it is wholly unsupported by the factual allegations and will be dismissed.[3] Accordingly, Plaintiff's Fourth Amendment claims for unlawful seizure alleged in Counts II and III will be dismissed for failure to state a claim as will the excessive force claim brought against Savard.[4]

       3.    *Conspiracy*

---

[3] As the Court previously mentioned, McFarlane has filed a motion for summary judgment on Plaintiff's excessive force claim. The Court will address McFarlane's motion below.

[4] Because Plaintiff has failed to state a claim for unlawful seizure or excessive force, the Court need not address the Individual Defendants' argument that they are entitled to qualified immunity.

Counts IV and V are conspiracy claims brought pursuant to *Bivens* and §§ 1983 and 1985(3), respectively. Again, the Individual Defendants argue that Plaintiff has failed to state a claim for conspiracy. "A plaintiff may state a . . . claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the *actual denial of some underlying constitutional right*." *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010) (emphasis added).[5] Plaintiff alleges that the Individual Defendants conspired to violate Todashev's Fourth Amendment rights. However, as the Court previously discussed, Plaintiff failed to adequately plead that Todashev's Fourth Amended rights were violated. Because the SAC fails to sufficiently allege that the Individual Defendants' conduct resulted in the actual denial of Todashev's Fourth Amendment rights, the conspiracy claims are due to be dismissed. *See id.* ("The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." (quotation omitted)).

Furthermore, even if Plaintiff had sufficiently alleged Fourth Amendment violations, the Court would still dismiss Plaintiff's conspiracy claims. "To avoid dismissal on a motion to dismiss, the plaintiff must make particularized allegations that a conspiracy exists." *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1346 (S.D. Fla. 2012) (citing *Hansel v. All Gone Towing Co.*, 132 F. App'x 308, 309 (11th Cir. 2005)). "Vague and conclusory allegations suggesting a [§] 1983

---

[5] Although *Grider* involved a § 1983 claim for conspiracy, the elements for a civil conspiracy claim brought under *Bivens* are the same. *See Saleh v. Florida*, No. 3:17-cv-1465-J-34PDB, 2018 WL 2976049, at *7 (M.D. Fla. May 23, 2018) ("A *Bivens* claim is analogous to a claim under § 1983 . . . ."), *report and recommendation adopted*, 2018 WL 2971045 (M.D. Fla. June 13, 2018). The elements for a claim for conspiracy under § 1985(3) are substantially similar. To successfully state a claim for civil conspiracy pursuant to § 1985(3), a plaintiff must allege, among other things, that the conspiracy caused the "person [to be] injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997).

conspiracy are insufficient to withstand a motion to dismiss." *Id.* (citing *Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir.1984)). The allegations contained in Counts IV and V are the epitome of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, and thus fail to satisfy federal pleading standards. Accordingly, Counts IV and V will be dismissed

### 4.    *Failure to Intervene*

Though not entirely clear, it appears that Plaintiff attempts to bring a failure-to-intervene claim against Defendants Gagne, Cinelli, and Savard in Count III. Those Defendants argue that this claim should be dismissed because Plaintiff has failed to set forth sufficient facts to state a claim. The Court agrees. Plaintiff merely alleges that Gagne, Cinelli, and Savard could have intervened but failed to do so, (Doc. 48 ¶¶ 105–107, 151), and that "[e]ach was at or very near the scene, in constant communication with each other, and by word or text could have intervened to prevent Todashev's death," (*id.* ¶ 116). These threadbare recitals are inadequate, and therefore, dismissal of the failure-to-intervene claim is appropriate.

Moreover, "[t]hough an officer may be liable for failing to intervene when another officer uses excessive force, liability 'only arises when the officer is in a position to intervene and fails to do so.'" *Perez v. Harrelson*, No. 6:15-cv-879-Orl-37GJK, 2016 WL 866590, at *5 (M.D. Fla. Mar. 7, 2016) (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 924–25 (11th Cir. 2000)). The Eleventh Circuit has held that an officer is not "in a position to intervene against the use of excessive force where he or she was unable to observe a fellow officer's use of force." *Militello v. Sheriff of Broward Sheriff's Office*, 684 F. App'x 809, 813 (11th Cir. 2017). Because Gagne and Savard were outside the apartment and unable to observe McFarlane's alleged use of excessive force, the failure-to-intervene claim brought against them is due to be dismissed.

While Cinelli was in the apartment when McFarlane allegedly used excessive force, the SAC is completely lacking any factual allegations regarding Cinelli's purported failure to intervene, including that Cinelli was in a position to intervene. *See Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010) (holding that the plaintiff's failure to allege facts about the duration of the alleged constitutional violation or that the defendants were in a position to intervene was fatal to the plaintiff's failure-to-intervene claim). Thus, Plaintiff's failure-to-intervene claim, articulated in Count III, will be dismissed.[6]

### 5. Amendment

The Court has concluded that the negligent hiring claim in Count I and Counts II through V—with the exception of the excessive force claim brought against McFarlane—will be dismissed because Plaintiff has failed to sufficiently state a claim with respect to each Count. The Individual Defendants argue that Plaintiff's claims should be dismissed with prejudice because this is the third attempt by Plaintiff to plead colorable claims in this case. "The district court . . . need not allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005). This is the third complaint that Plaintiff has filed in this action, yet Plaintiff has failed to "properly amend [his] complaint after

---

[6] Gagne and Cinelli also argue that Plaintiff has failed to state a claim for a violation of Todashev's Fifth Amendment right against self-incrimination despite Plaintiff's allegations that Todashev was "forced to incriminate himself," (Doc. 48 ¶ 158), among others. However, Defendants McFarlane and Savard accurately point out that Plaintiff has explained that "he does not rely on the Fifth Amendment as the operative constitutional violation but solely on the Fourth Amendment seizure . . . ." (Omnibus Resp. to Defs.' Mot. to Dismiss, Doc. 43, at 14). Additionally, Plaintiff's Response does not indicate that Plaintiff intended to assert a Fifth Amendment claim. Accordingly, the Court concludes that the SAC does not bring a Fifth Amendment claim and declines to address Gagne's and Cinelli's arguments for dismissal.

repeated opportunity to do so." *Stevens v. Gay*, 864 F.2d 113, 116 (11th Cir. 1989). Indeed, the SAC is woefully deficient. Under these circumstances, it appears that granting Plaintiff leave to amend to file a third amended complaint would be futile, especially where Plaintiff concedes that he has no personal knowledge of the facts giving rise to his claims, (*see* Doc. 48 ¶ 113). Additionally, Plaintiff's Response does not seek leave to file an amended complaint. *See Novoneuron Inc. v. Addiction Research Inst., Inc.*, 326 F. App'x 505, 507 (11th Cir. 2009) (noting that a "district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend" (quotation omitted)). Accordingly, the negligent hiring, supervising, and retention claim in Count I and Counts II through V, with the exception of the excessive force claim brought against McFarlane in Count II, will be dismissed with prejudice.

### III. PLAINTIFF'S OBJECTION

Plaintiff has filed an Objection to United States Magistrate Judge Gregory J. Kelly's Order denying Plaintiff's request for additional discovery pursuant to Federal Rule of Civil Procedure 56(d) and staying discovery pending the Court's ruling on the pending dispositive motions. Parties may object to orders issued by magistrate judges on non-dispositive matters. Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1). "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC*, 929 F. Supp. 2d 1255, 1260 (M.D. Fla. 2013) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of

procedure." *Id.* (quotation omitted). "A judge of the court may accept, reject, or modify, in whole or in part, the findings . . . made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

Plaintiff objects to Judge Kelly's denial of his request for additional discovery under Rule 56(d). Judge Kelly denied Plaintiff's request because Plaintiff failed to comply with the requirements set forth in Rule 56(d); specifically, Plaintiff submitted a deficient affidavit in support of his request. Plaintiff has failed to demonstrate that Judge Kelly's decision is clearly erroneous or contrary to law. In fact, Plaintiff agrees with Judge Kelly's conclusion that his affidavit does not satisfy Rule 56(d) according to Eleventh Circuit precedent. (*See* Doc. 80 at 2 (acknowledging that his affidavit did "not meet the valid expectations of" *Harbert International, Inc. v. James*, 157 F.3d 1271 (11th Cir. 1998)). Nevertheless, Plaintiff states that he "enumerated the discovery needs in detail in the motion." (*Id.*). Nothing could be further from the truth. (*See* Doc. 67 at 23–24). Additionally, in his Objection, Plaintiff lists the items that he wishes to obtain through discovery, but this information was not provided to Judge Kelly and thus fails to show that Judge Kelly erred in denying Plaintiff's request.

Plaintiff also objects to Judge Kelly's ruling to stay discovery. But Plaintiff's objections amount to nothing more than conclusory remarks about how the scales tip in favor of permitting discovery to continue, that judicial economy weighs against a stay, and generalities as to why qualified immunity should be denied. Plaintiff fails to generally explain or provide citation to any legal authority establishing that the stay of discovery is contrary to the proper application of any law. Accordingly, Plaintiff has not met his burden and shown that Judge's Kelly's Order denying Plaintiff's request for additional discovery and staying discovery is clearly erroneous or contrary to law. Consequently, Plaintiff's Objection (Doc. 80) will be overruled.

IV.     **M**C**F**ARLANE'S **P**RE-**D**ISCOVERY **M**OTION FOR **S**UMMARY **J**UDGMENT

A.     **Background**

As noted above, McFarlane has moved for pre-discovery summary judgment as to Plaintiff's excessive force claim. The following facts are undisputed for purposes of McFarlane's motion for summary judgment.[7] Todashev was of interest to the FBI because of his association with Tamerlan Tsarnaev, one of the Boston Marathon bombers, and was of interest to the Massachusetts State Police because of his possible involvement in a triple homicide that occurred in Waltham, Massachusetts. (Doc. 48 ¶¶ 27, 29; Doc. 67 at 2 (admitting that the FBI was interested in Todashev because he trained at a Boston gym with Tsarnaev); Gagne Tr., Doc. 67-1, at 4:19–21, 5:1–2).[8] At the time of events giving rise to this suit, Todashev was living in Orlando, Florida. (*See* Cinelli Statement, Doc. 61-2, at 3; *see also* Doc. 67 at 2 (admitting that Plaintiff was residing in Orlando, Florida, when the events giving rise to this suit occurred)). On May 21, 2013, Christopher Savard, Task Force Officer of the Orlando Police Department, contacted Todashev to arrange a meeting with himself as well as Special Agent for the FBI, Aaron McFarlane, and Massachusetts State Troopers Curtis Cinelli and Joel Gagne. (*See* Doc. 61-1 at 6; Doc. 61-2 at 3). Todashev agreed to meet with the Individual Defendants at his apartment. (Doc. 61-2 at 2). Before the meeting with Todashev, McFarlane knew that Todashev had trained in mixed martial arts and wrestling and that Todashev had been previously arrested on two different occasions—once for a road rage incident and a second time for fighting two men in a parking lot over a parking space,

---

[7] While Plaintiff claims to dispute many of these facts, he merely asserts conclusory statements to indicate his disagreement and fails to provide any evidence to demonstrate that a material dispute of fact exists.

[8] All of the Defendants' names are redacted from the transcripts submitted by Plaintiff, but McFarlane does not dispute Plaintiff's representation as to who made the statements submitted by Plaintiff as evidence.

where Todashev knocked one of the men unconscious and caused several of his teeth to shift. (Doc. 61-1 at 5–6; Doc. 61-2 at 3; Garcia Tr., Doc. 67-14, at 6:13–20). Based on the research McFarlane and Cinelli conducted prior to the May 21, 2013 meeting with Todashev, McFarlane assessed Todashev's "inclination and ability for physical violence" to be an eight out of ten, and Cinelli believed that Todashev was dangerous. (Doc. 61-1 at 5–6; Doc. 61-2 at 3).

The interview with Todashev began on May 21, 2013, around 7:30 p.m. (Doc. 61-1 at 7; Doc. 61-2 at 3). McFarlane, Cinelli, and Gagne entered the apartment, and Savard remained in the parking lot. (Doc. 61-1 at 7; Doc. 61-2 at 4). McFarlane, Cinelli, and Gagne questioned Todashev about the Waltham murders. (Doc. 61-1 at 8; Doc. 61-2 at 4). When the questions began to focus on Todashev's presence in Boston when the murders occurred, Todashev's demeanor changed; it appeared to McFarlane that Todashev was very stressed, and it seemed increasingly likely that Todashev might physically react to the questioning. (Doc. 61-1 at 8; Doc. 61-2 at 4).

Todashev acknowledged his involvement in the Waltham murders and agreed to write a statement. (Doc. 61-1 at 8; Doc. 61-2 at 4). While Todashev was writing his statement, Gagne exited the apartment to call the Middlesex Assistant District Attorney. (Doc. 61-1 at 9). Todashev then asked to use the restroom for the third or fourth time over the course of the interview. (Doc. 61-1 at 9; Doc. 61-2 at 4). According to McFarlane, each time Todashev used the restroom, it caused McFarlane to have a heightened sense of awareness for his and Cinelli's safety. (Doc. 61-1 at 9). During this visit to the restroom, Cinelli observed that Todashev was moving noticeably slow, almost methodically. (Doc. 61-2 at 4). Cinelli became more concerned that Todashev might try to flee or attack him and McFarlane. (Doc. 61-2 at 4). As a result, Cinelli grabbed a sword that was hanging on the wall nearby and hid it in the kitchen, out of Todashev's reach. (Doc. 61-2 at 4–5). Based on Todashev's continued erratic behavior, Cinelli sent a text message to Gagne and

McFarlane, stating: "Be on guard. He is in [a] vulnerable position to do something bad. Be on guard now. I see him looking around at times." (*Id.*; *see also* Ex. 8, Doc. 61-8, at 2).

Just after Cinelli sent the text message, Todashev threw a white table at McFarlane, causing McFarlane to suffer a serious head wound that would later require McFarlane to receive nine staples in his skull. (*See* Doc. 61-1 at 10; 61-2 at 5; Ex. 9, Doc. 61-9, at 2 (displaying a white table that had been flipped over in Todashev's apartment); Ex. 10, Doc. 61-10, at 2–5(displaying McFarlane's resulting head injury, including the staples used to help repair the wound, and McFarlane's bloody shirt); Decl. of John B. Geeslin, Doc. 61-17, ¶ 4 (stating that he took the photographs of McFarlane's head and his bloody shirt on May 22, 2013, at Florida Hospital South and that they are true and correct copies)). Next, Todashev ran past McFarlane towards the kitchen. (Doc. 61-1 at 10; Doc. 61-2 at 5). McFarlane attempted to grab Todashev, but he was unsuccessful. (Doc. 61-1 at 10). McFarlane removed his gun from his holster, aimed it at Todashev, and repeatedly shouted to Todashev "show me your hands!", but Todashev did not comply. (*Id.*). At this point McFarlane and Cinelli's recollection of the events diverge somewhat; however the differences in their recollections are immaterial.[9]

Despite the discrepancies between their accounts, the following facts have been established: While near the kitchen, Todashev obtained what McFarlane and Cinelli believed to be a weapon of some sort. (Doc. 61-1 at 10; Doc. 61-2 at 5). Thereafter, Todashev, moving

---

[9] For example, McFarlane states that Todashev ran into the kitchen and then McFarlane "heard the sound of metal banging together like knives in a very hurried fashion." (Doc. 61-1 at 10). McFarlane "believed that Todashev was trying to retrieve a weapon . . . and that he was successful in doing so." (*Id.*). According to Cinelli, Todashev ran "toward the door near the kitchen area and began quickly scanning left to right as if looking for something." (Doc. 61-2 at 5). "He then darted toward the door, [and Cinelli] thought he was trying to flee . . . ." (*Id.*). As Todashev reached the door, Cinelli saw him grab an approximately five-foot-long red pole that was leaning against the wall near the door. (*Id.*). Cinelli stated that Todashev raised the pole above his head with both hands and charged at him. (*Id.*).

extremely quickly and in a fighting position, charged towards Cinelli and McFarlane. (Doc. 61-1 at 11; Doc. 61-2 at 5). Both Cinelli and McFarlane felt threatened. (Doc. 61-1 at 11; *see* Doc. 61-2 at 5 (explaining that Todashev, in a trained fighting position, charged toward Cinelli as if he was going to impale him)). McFarlane, in fear of his and Cinelli's life, (Doc. 61-1 at 11), shot at Todashev three to four times, (Doc. 61-1 at 11; Doc. 61-2 at 5). Impacted by the bullets, Todashev fell,[10] but he quickly re-established his footing and suddenly lunged toward Cinelli and McFarlane again, causing McFarlane to fire three to four more shots at Todashev. (Doc. 61-1 at 11; Doc. 61-2 at 5–6). Todashev fell to the ground and appeared to be incapacitated. (Doc. 61-1 at 11; Doc. 61-2 at 6).

### B.    Legal Standard

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

---

[10] McFarlane and Cinelli's statements indicate that they saw Todashev fall in a different direction after the first shots were fired, (*compare* Doc. 61-1 at 11 (stating that Todashev fell backwards but did not go to the ground), *with* Doc. 61-2 at 5 (recounting that Todashev fell to his hands and knees)), but this again is an immaterial distinction.

However, once the moving party has discharged its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

"As a general rule summary judgment should not be granted until the party opposing the motion has had an adequate opportunity to conduct discovery." *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843 (11th Cir. 1989). However, the Eleventh Circuit has explicitly rejected that there is a "blanket prohibition on the granting of summary judgment motions before discovery." *Id.* Pursuant to Federal Rule of Civil Procedure 56(b), "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Accordingly, the rule does not require a party to wait to file a motion for summary judgment until after discovery has occurred. *Reflectone*, 862 F.2d at 844. "Furthermore, rule 56[(d)][11] shows that a court may grant summary judgment without the parties having conducted discovery if the opponent has not sought discovery by making a motion under rule 56[(d)], or if the court has, in the valid exercise of its discretion, denied such a motion." *Id.* Additionally, the Eleventh Circuit has suggested that pre-discovery summary judgment motions are particularly appropriate where the defendant raises a qualified immunity defense. *See Garner v. City of Ozark*, 587 F. App'x 515, 518 (11th Cir. 2014) (per

---

[11] The case originally referred to Rule 56(f). However, "[e]ffective December 1, 2010, Rule 56(f) was reclassified as Rule 56(d) with no substantial changes." (Apr. 25, 2018 Order, Doc. 79, at 6 n.5 (citing Fed. R. Civ. P. 56 Advisory Committee Notes to the 2010 Amendments)).

curiam) (holding that the district court erred in denying the city's motion for pre-discovery summary judgment where the plaintiff failed to satisfy the requirements for additional discovery under Rule 56(d), and therefore, the city's qualified immunity claim warranted a ruling without further discovery); *see also id.* ("cautioning that district courts should be especially careful in allowing Rule 56(d) discovery before considering a qualified-immunity based summary judgment motion" (citing *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987))); *id.* ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery." (quoting *Iqbal*, 556 U.S. at 685)).

McFarlane asks the Court to enter summary judgment in his favor before the parties have had the opportunity to engage in discovery. The Court has denied Plaintiff's Rule 56(d) motion. Additionally, McFarlane argues in his motion that he is entitled to qualified immunity. Thus, the Court concludes that although McFarlane has moved for summary judgment prior to discovery, his motion may be granted so long as the Court is satisfied that McFarlane has demonstrated that there is no genuine dispute as to any material fact and that McFarlane is entitled to judgment as a matter of law.

### C.    Analysis

McFarlane argues that summary judgment should be entered in his favor on Plaintiff's excessive force claim because he is entitled to qualified immunity. Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) (quoting *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009). "In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation omitted). If he does, the burden shifts to the plaintiff to satisfy the "two-part inquiry"; on summary judgment, that inquiry requires consideration of—(1) whether, under the plaintiff's version of the facts, the defendant's conduct violated a constitutional right and (2) whether the right was "clearly established." *Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016) (quotation omitted). "A qualified-immunity inquiry can begin with either prong; neither is antecedent to the other." *Morris v. Town of Lexington*, 748 F.3d 1316, 1322 (11th Cir. 2014) (citing *Pearson*, 555 U.S. at 236). Plaintiff does not dispute that at the time of the alleged use of excessive force, McFarlane was acting within the scope of his discretionary authority. Therefore, Plaintiff bears the burden of satisfying the two-part inquiry. *See Jackson v. Humphrey*, 776 F.3d 1232, 1240 (11th Cir. 2015) (bypassing the discretionary authority inquiry where not disputed); *Saunders*, 766 F.3d at 1266 (same).

The Court first addresses whether Plaintiff has met his burden and established that McFarlane violated Todashev's constitutional right to be free from excessive force. "The Fourth Amendment's guarantee against unreasonable searches and seizures includes the right to be free from the use of excessive force in the course of an arrest." *Saunders*, 766 F.3d at 1266–67. "[T]o determine whether the amount of force used was proper, a court must ask whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." *Id.* at 1267 (quotation omitted). Doing so "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In *Graham*, the

Supreme Court offered the following factors for guidance—(1) "the severity of the crime at issue,"

(2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3)

"whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. In

the context of deadly force, such force is constitutionally permissible when an officer:

> (1) has probable cause to believe that the suspect poses a threat of
> serious physical harm, either to the officer or to others or that he has
> committed a crime involving the infliction or threatened infliction
> of serious physical harm; (2) reasonably believes that the use of
> deadly force was necessary to prevent escape; *and* (3) has given
> some warning about the possible use of deadly force, if feasible.

*Perez*, 809 F.3d at 1218–19 (quoting *Morton v. Kirkwood*, 707 F.3d 1276, 1281 (11th Cir. 2013)).

According to the Supreme Court, the latter set of deadly force factors, which are derived from

*Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985), are "simply an application of the Fourth

Amendment's 'reasonableness' test." *Scott v. Harris*, 550 U.S. 372, 382 (2007). Indeed, "*Garner*

did not establish a magical on/off switch" for the reasonableness determination. *Id.* "Although

these factors are useful, [courts] cannot apply them mechanically"; they must, instead, "slosh

[their] way through the factbound morass of reasonableness." *Morton*, 707 F.3d at 1281 (citation

and quotation omitted).

Plaintiff has failed to demonstrate that McFarlane violated Todashev's right to be free from

excessive force. Notably, Plaintiff does not present any arguments that are responsive to

McFarlane's summary judgment motion. Plaintiff's Response appears to be nearly identical to his

Response filed in opposition to the Individual Defendants' motions to dismiss. (*Compare* Doc. 67

at 11–21, *with* Doc. 68 at 3–12). It is therefore unsurprising that Plaintiff's Response to

McFarlane's summary judgment motion fails to provide any relevant discussion of McFarlane's

use of force or that it fails to cite to any evidence or caselaw to oppose McFarlane's summary

judgment motion. As noted above, Plaintiff bears the burden of demonstrating that McFarlane violated Todashev's constitutional right, and Plaintiff has failed to do so.

Moreover, McFarlane has presented a compelling argument that he did not violate Todashev's right to be free from excessive force; rather he acted reasonably under the circumstances. "It is reasonable, and therefore constitutionally permissible, for an officer to use deadly force against a person who poses an imminent threat of serious physical harm to the officer or others." *Martinez v. City of Pembroke Pines*, 648 F. App'x 888, 893 (11th Cir. 2016); *see also McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1246 (11th Cir. 2003) ("Because the Constitution permits the use of deadly force to prevent a violent suspect from escaping, the Constitution must also permit the use of deadly force against a suspect who poses not merely an escape risk (because he is not yet in police control), but also an imminent threat of danger to a police officer or others."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1169 (11th Cir. 2009) ("Accordingly, we concluded that the officer was justified in shooting . . . because the officer could reasonably believe that the man posed a risk of serious physical injury to the officer . . . ." (citing *Montoute v. Carr*, 114 F.3d 181, 185 (11th Cir. 1997)); *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996) ("Law enforcement officers are provided a complete defense to an excessive use of force claim where an officer reasonably believes the force to be necessary to defend himself or another from bodily harm . . . ." (quotation omitted)). Both McFarlane and Cinelli indicated that they felt seriously threatened; in fact, McFarlane specifically stated that he was in fear for his and Cinelli's life, and the Court concludes that based on the circumstances, this fear was reasonable.

After Todashev seriously injured McFarlane by throwing a table at his head, Todashev ran to the kitchen area, ignoring McFarlane's orders to show McFarlane his hands. Additionally,

McFarlane knew Todashev was trained in martial arts, had a history of aggressive behavior—including being involved in the Waltham triple homicide, for which he had just written a statement—and believed Todashev had a weapon when he came charging at him and Cinelli. Based on these facts, Eleventh Circuit caselaw supports McFarlane's use of force. Indeed, the Eleventh Circuit has affirmed summary judgment on the basis of qualified immunity where officers used deadly force against an individual in possession of an every-day item that could be used as a weapon, *see McCormick*, 333 F.3d at 1246 (holding that the officer acted reasonably when he shot a man who had recently committed violent acts against another person and who approached the officer while raising his walking stick above his head and pumping or swinging his stick at the officer because the man "posed an imminent threat of violence to the officer" and "continued to ignore repeated commands"), or no weapon at all, *see City of Pembroke Pines*, 648 F. App'x at 890, 893 (concluding that the officer acted reasonably when he shot an individual who appeared to be suffering from some type of psychological fit, had already injured the officer, and took two steps toward the officer without any weapon other than one end of a pair of handcuffs attached to one of his wrists); *see also Hammett v. Paulding Cty.*, 875 F.3d 1036, 1051–53 (11th Cir. 2017) (concluding that the defendant officers had probable cause to believe that a man posed a threat of serious physical harm to one of the officers, and therefore, the officers were justified in firing their weapons where the man was carrying something, disobeyed one of the officer's instructions to show his hands, moved aggressively toward one of the officers, and raised his hands rapidly towards the officer's face).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*,

490 U.S. at 396–97. In fact, courts have discouraged law enforcement officers from delaying the use of force—even deadly force—where the circumstances demonstrate that such force is objectively reasonable. *See Scott*, 550 U.S. at 385 ("We think the police need not have taken that chance and hoped for the best."); *Long v. Slaton*, 508 F.3d 576, 581 (11th Cir. 2007) ("[T]he law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect."); *see also City of Pembroke Pines*, 648 F. App'x at 894 (stating that the law enforcement officer was not "required to wait and see what might happen if he allowed Plaintiff to advance further"). This line of reasoning further demonstrates that McFarlane acted reasonably under the circumstances. Todashev was known to have acted violently in the past, had already injured McFarlane, ignored McFarlane's orders, was believed to have a weapon, and aggressively charged at McFarlane and Cinelli. McFarlane was therefore legally permitted to protect himself and Cinelli; he was not required to wait and see what Todashev might do next.

In sum, Plaintiff has failed to demonstrate that McFarlane violated Todashev's Fourth Amendment right to be free from excessive force. Because Plaintiff has failed to satisfy one of two necessary prongs to defeat McFarlane's qualified immunity defense, McFarlane is entitled to qualified immunity, and the Court will grant McFarlane's summary judgment motion.

## V.   Conclusion

For the reasons stated herein, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Objections (Doc. 80) are **OVERRULED**, and the April 25, 2018 Order (Doc. 79) is **AFFIRMED**.

2. Individual Federal Defendant Aaron McFarlane's Motion for Pre-Discovery Summary Judgment (Doc. 61) is **GRANTED**. The Clerk is directed to enter

judgment in favor of Defendant Aaron McFarlane and against Plaintiff on Plaintiff's excessive force claim against Aaron McFarlane.

3. The Government's Motion to Dismiss (Doc. 60) is **GRANTED**. Plaintiff's negligent hiring claim, as set forth in Count I, is **DISMISSED with prejudice**.

4. The Individual Federal Defendants' Motion to Dismiss (Doc. 59) is **GRANTED**.

5. Defendants Curtis Cinelli and Joel Gagne's Motion to Dismiss (Doc. 63) is **GRANTED**.

6. The remaining claims in Counts II through V are **DISMISSED with prejudice**. The Clerk is directed to terminate Aaron McFarlane, Christopher John Savard, Curtis Cinelli, and Joel Gagne as Defendants in this matter and amend the case style accordingly.

7. Defendants Joel Gagne and Curtis Cinelli's Motion for Summary Judgment (Doc. 85) is **DENIED as moot**.

**DONE** and **ORDERED** in Orlando, Florida on August 17, 2018.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record