[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10245

_____

D.C. Docket No. 6:17-cv-00919-CEM-GJK

ESTATE OF IBRAGIM TODASHEV, by Hassan Shibly, as Personal Representative of the Estate of Ibragim Todashev, and for the Survivors, Abdulbaki Todasheve, Father, and Zulla Todasheva, Mother,

                                        Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,
AARON McFARLANE, individually,
CHRISTOPHER JOHN SAVARD, individually,
CURTIS CINELLI,
JOEL GAGNE,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 19, 2020)

Before JORDAN, TJOFLAT, and TRAXLER,* Circuit Judges.

_____

* The Honorable William B. Traxler, Jr., Senior United States Circuit Judge for the Fourth Circuit, sitting by designation.

PER CURIAM:

Hassan Shibly, as personal representative of the estate of Ibragim Todashev and on behalf of Todashev's survivors, (the "Plaintiff"), brought this action against the United States of America, FBI Special Agent Aaron McFarlane, Joint Terrorism Task Force Officer Christopher Savard of the Orlando Police Department, and Massachusetts State Troopers Curtis Cinelli and Joel Gagne.  The lawsuit arises out of a joint federal and state investigation into the Boston Marathon bombings and a triple murder in Waltham, Massachusetts, which led to Todashev being shot and killed by Agent McFarlane.

Count I asserted claims against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, for the negligent hiring, supervision, and retention of McFarlane, and for the wrongful death of Todashev. Count II asserted *Bivens* claims against McFarlane and Savard, alleging that McFarlane had used excessive force, that Savard failed to intervene to prevent the use of excessive force, and that both men had unlawfully seized Todashev prior to the shooting.  *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Count III asserted claims against Gagne and Cinelli, alleging unlawful seizure and failure to intervene in violation of 42 U.S.C. § 1983. Counts IV and V alleged the existence of a conspiracy to violate Todashev's

constitutional rights against McFarlane and Savard under *Bivens*, and against Gagne and Cinelli under 42 U.S.C. § 1983, respectively.[1]

The district court denied Plaintiff's request to conduct discovery under Rule 56(d) of the Federal Rules of Civil Procedure, granted McFarlane's pre-discovery motion for summary judgment on the excessive force claim, and granted the United States' pre-discovery motion for summary judgment on the wrongful death claim. The district court also granted the United States' motion to dismiss the claim for negligent hiring, as well as the individual defendants' motions to dismiss the remaining claims.  We affirm in part, reverse in part, vacate in part, and remand for further proceedings.

## I.

Plaintiff's operative complaint, filed on December 29, 2017, contains the following  pertinent allegations.[2]

At the time of his death, Ibragim Todashev was a Chechen immigrant and amateur martial arts fighter living in Orlando, Florida.  McFarlane was assigned to the Boston FBI office and involved in investigating the April 15, 2013, Boston

---

[1] Because Savard was an officer with the Orlando Police Department, as well as a member of the FBI's Joint Terrorism Task Force, Plaintiff asserted claims against him, in the alternative, under 42 U.S.C. § 1983.

[2] Plaintiff's initial complaint was filed on May 22, 2017.  The operative complaint for purposes of this appeal is Plaintiff's Second Amended Complaint.

Marathon bombings.  Todashev was identified by the FBI as a person of interest in the investigation because he had trained in martial arts with Tamerlan Tsarnaev, one of the bombers, at the Wai Kru Gym in Boston.  The Massachusetts State Police also wanted to question Todashev about a triple murder committed in Waltham, Massachusetts, in 2011.

As a member of the Joint Terrorism Task Force, Savard coordinated surveillance of Todashev in Florida for the FBI.  On May 21, 2013, Savard contacted Todashev and arranged for him to be interviewed by McFarlane, Cinelli and Gagne. The interview began at approximately 7:00 p.m. in Todashev's apartment.  Savard was also present, but he remained outside the apartment.  The defendants claim that Todashev "was about to confess" to the triple murder in Massachusetts during the interview, and that Gagne stepped outside to call the district attorney, leaving only McFarlane and Cinelli with Todashev.  Shortly after midnight, McFarlane shot and killed Todashev inside the apartment.  McFarlane and Cinelli claim that Todashev was charging aggressively towards them with a red pole when he was shot, but Todashev's prints were not found on the pole or any other weapon.  Todashev was shot "three times in the back, twice in the upper left arm, once in the left chest, and once near the top of his head to the left."  Plaintiff alleged that "[t]he three gunshot wounds to the back [were] consistent with Todashev falling backwards, but with his back toward the shooter, possibly trying to flee" when he was shot.

Plaintiff alleges that "[n]o living person was at the scene except for the Defendants and their stories are fragmentary, equivocal and inconsistent with each other." Plaintiff also alleges that McFarlane's and Cinelli's reports are "inconsistent with the known physical evidence," including the "[b]ullet trajectories and blood spatter evidence." Plaintiff also alleges that the defendants "have given various inconsistent reasons why the video recordings [of the interview], which have not been released, kept going off and on during the interview," and that "the F.B.I. continues to withhold evidence based on an 'ongoing investigation.'"

On January 12, 2018, the defendants filed a joint motion to stay the case management conference and the filing of the case management report, and to stay all discovery, pending the district court's ruling on the individual defendants' forthcoming dispositive motions for qualified immunity.[3] Shortly thereafter, the individual defendants moved to dismiss all claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, with the exception of the excessive force claim alleged against McFarlane. McFarlane filed a separate pre-discovery motion for summary judgment on the excessive force claim under Rule 56(a). The United States filed a motion to dismiss the negligent supervision claim under Rules 12(b)(1) and (b)(6), and a pre-discovery motion for summary judgment on the wrongful death claim

---

[3] Under the Federal Rules of Civil Procedure, the case management report triggers the commencement of discovery, including the deadline for the exchange of initial disclosures. *See* Fed. R. Civ. P. 26(a)(1), 26(d), 26(f).

under Rule 56(a).  Plaintiff opposed all motions and requested an opportunity to conduct discovery under Rule 56(d) before being made to respond to the motions for summary judgment.

The magistrate judge rejected Plaintiff's Rule 56(d) request and stayed all discovery pending the district court's rulings on qualified immunity.  The district court affirmed the magistrate judge's ruling, granted the motions to dismiss, and granted McFarlane's and the United States' pre-discovery motions for summary judgment.  This appeal followed.

## II.

We summarily affirm the district court's order granting the individual defendants' motions to dismiss, the district court's order dismissing the negligent supervision claim against the United States, and the district court's order granting summary judgment to the United States on the wrongful death claim.  Because Plaintiff failed to challenge these rulings in his initial brief, he has abandoned any appeal of them to this court.  *See United States v. Nealy*, 232 F.3d 825, 830 (11th Cir. 2000); *see also United States v. Ardley*, 242 F.3d 989, 990 (11th Cir. 2001) (per curiam) ("[I]issues and contentions not timely raised in the briefs are deemed abandoned."); Fed. R. App. Proc. 28(a)(5) ("The appellant's brief must contain, under appropriate headings[,] . . . a statement of the issues presented for review.").

Accordingly, the only remaining issues are Plaintiff's appeal of the district court's denial of his request to conduct discovery under Rule 56(d) of the Federal Rules of Civil Procedure, and the district court's grant of summary judgment to McFarlane on the basis of qualified immunity under Rule 56(a).

## III.

### A.

"The Fourth Amendment's guarantee against unreasonable searches and seizures includes the right to be free from the use of excessive force in the course of an arrest." *Saunders v. Duke*, 766 F.3d 1262, 1266-67 (11th Cir. 2014). "In order to determine whether the amount of force used was proper, a court must ask whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." *Id*. at 1267 (internal quotation marks omitted).

> [T]he question whether an officer has used excessive force "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

*Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The question is "whether the totality of the circumstances justified a particular sort of search or seizure." *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). When an officer uses deadly force, we must decide whether

the officer had "probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id.* at 3.

"Qualified immunity protects a government official from being sued for damages . . . unless preexisting law clearly establishes the unlawfulness of his actions, such that any reasonable official in his position would be on notice that his conduct was unlawful." *Hunter v. City of Leeds*, 941 F.3d 1265, 1278 (11th Cir. 2019). "When determining whether a defendant is entitled to qualified immunity, we resolve any issues of material fact in favor of the plaintiff." *Alston v. Swarbrick*, 954 F.3d 1312, 1317-18 (11th Cir. 2020). "Police officers acting in their discretionary authority are entitled to qualified immunity from suit unless a plaintiff can establish that (1) the officer violated a constitutional right, and (2) the right violated was clearly established." *Id.* at 1318; *see also Hunter*, 941 F.3d at 1278. "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted).

Under Rule 56, a motion for summary judgment based upon qualified immunity should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The nonmoving party may dispute a material fact through

citation to "particular parts of materials in the record," including materials obtained in discovery, Fed. R. Civ. P. 56(c)(1)(A), as well as through affidavits or declarations that are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Under Rule 56(b), a summary-judgment motion can be filed "at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). There is no "blanket prohibition on the granting of summary judgment motions before discovery" has occurred. *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843 (11th Cir. 1989) (per curiam). However, "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity to conduct discovery." *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (Summary judgment is normally appropriate "after adequate time for discovery.").

Rule 56(d) provides shelter against a premature motion for summary judgment "when facts are unavailable to the nonmovant." Fed. R. Civ. P. 56(d). It qualifies Rule 56(c)'s requirement that the non-moving party establish that a genuine dispute of fact exists in cases "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986).[4]  If the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the district court may defer considering the motion, deny the motion, allow additional time to obtain affidavits or declarations or to conduct discovery, or issue another appropriate order.  Fed. R. Civ. P. 56(d).  Accordingly, Rule 56 provides a nonmoving party an alternative avenue to stave off the granting of a motion for summary judgment.  The party can "produce[] affidavits or other evidence contradicting the movants," or the party can "explain[] [its] failure to do so under subsection ([d])."  *Wallace v. Brownell Pontiac-GMC Co.*, 703 F.2d 525, 528 (11th Cir. 1983).

We review a district court's denial of a request to conduct discovery under Rule 56(d) for an abuse of discretion.  *See Fla. Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1315 (11th Cir. 1990).  "Whether to grant or deny a Rule 56[(d)] motion for discovery requires the court to balance the movant's demonstrated need for discovery against the burden such discovery will place on the opposing party."  *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998).  In order to "protect[] the substance of the qualified immunity defense," however,

---

[4] Effective December 1, 2010, Rule 56(f) was reclassified as Rule 56(d) with no substantial change. *See* Fed. R. Civ. P. 56, Advisory Committee notes to the 2010 amendments.  In this opinion, pertinent caselaw that refers to such motions as Rule 56(f) motions has been altered to "56[(d)]."

this "balancing is done with a thumb on the side of the scale weighing against discovery." *Id*.

## B.

McFarlane's pre-discovery motion for summary judgment claimed that he was entitled to qualified immunity because, based on *his* version of the facts, he had probable cause to believe that Todashev posed a threat of death or serious physical harm to himself and Cinelli.

According to McFarlane, he and his fellow officers were aware of Todashev's training in martial arts as well as a history of violence on his part, and were on alert during the interview for the possibility that he might become violent. After Todashev began to verbally confess to the Waltham murders, Gagne walked outside to call a district attorney, leaving McFarlane and Cinelli alone in the apartment with Todashev. Todashev began to prepare a written confession at a table between him and McFarlane, but became increasingly nervous and agitated. Todashev then abruptly stood up and threw the table at McFarlane. The table struck McFarlane, causing a severe laceration to his skull. Todashev then ran towards the front door of the apartment and away from McFarlane and Cinelli. Cinelli, believing that Todashev was fleeing, did not draw his weapon. However, Todashev took a turn into the kitchen instead, where he appeared to be looking for a weapon. Todashev then re-emerged with a red pole raised at or above his shoulder and charged full-

speed and aggressively back towards McFarlane and Cinelli with the pole. Cinelli took a defensive posture. McFarlane, however, was able to draw his weapon and, although dazed and bleeding from his head wound, shot Todashev several times to stop his advance. Upon hearing the shots, Savard and Gagne ran into the apartment where they found Todashev lying dead in the hallway with the red pole underneath him and McFarlane bleeding profusely from his head wound.

In support of his motion for summary judgment, McFarlane submitted his sworn statement, the sworn statement of Cinelli, and a number of other partially-redacted photographs and documents. This included photographs of Todashev's apartment; photographs of McFarlane's head laceration and bloody clothing; Todashev's partially-written confession; a text message sent by Cinelli to the other law enforcement officers warning them that Todashev was becoming agitated; a transcript of the 911 call after the shooting; and several FBI Laboratory reports.

In response to McFarlane's pre-discovery motion for summary judgment, Plaintiff re-asserted the factual allegations stated in his complaint, as well as in his earlier response to the defendants' joint motion to stay all discovery, and requested discovery under Rule 56(d) before being made to specifically respond to McFarlane's version of the facts. Plaintiff pointed out that, because Todashev was deceased, "[t]he only available testimonial evidence regarding the facts of the case are declarations and affidavits by Defendants." Plaintiff explained why he believed

McFarlane's and Cinelli's descriptions of the alleged attack by Todashev were inconsistent with each other and with the physical evidence and photographs taken at the scene, and asserted that the location of the bullet wounds and the bullet trajectories were inconsistent with McFarlane's claim that Todashev was charging towards the officers with a raised red pole when he was shot.

In the accompanying sworn declaration, Plaintiff's counsel stated that he had "sought diligently to secure evidence in this matter and [had] found every official record heavily redacted and numerous records that would normally be available in a use of deadly force case entirely missing."  Counsel also advised that he had "been in contact with the Massachusetts Civil Liberties Union that has been litigating to force the disclosure of usable records in this case without success," and declared that he had "never seen a case in more than 20 years of litigating civil rights cases in which law enforcement and public agencies have been more secretive and unyielding."

It is not entirely clear from the record when the documents relied upon by Agent McFarlane were made public, or whether some of the documents only surfaced in connection with his motion.  But it is clear that, while Plaintiff has been able to independently obtain redacted versions of some documents, Plaintiff has not had an opportunity to conduct any discovery.  The crux of Plaintiff's opposition, therefore, is fairly simple.  He believes (based on what he knows so far) that

McFarlane's and Cinelli's accounts are not credible and, although he has no independent access to a first-hand account of the incident, that it is more likely that Todashev was attempting to flee from, and not charging towards, the officers when he was shot. Plaintiff requested an opportunity to obtain unredacted reports and any withheld reports, and to retain experts to perform their own models and tests to evaluate the facts and circumstances.

## C.

The magistrate judge denied Plaintiff's request to conduct discovery under Rule 56(d) on the sole ground that the accompanying declaration was legally deficient because the declaration did not "set[] forth with particularity the facts" that Plaintiff "expects to discover," *Harbert*, 157 F.3d at 1280, and "how those facts would be relevant to the qualified immunity issue." Rather, the declaration only stated why Plaintiff could not respond to the motion, *i.e.*, that "'every official record [has been] heavily redacted and numerous records that would normally be available in a use of deadly force case entirely missing.'"

Plaintiff filed objections to the magistrate judge's rulings, acknowledging that he did not include the unknown "facts" in the declaration, but reiterating the *reasons* why he could not "present facts essential to justify [his] opposition" to the motion. Fed. R. Civ. P. 56(d). Alternatively, Plaintiff requested that he at least be allowed to obtain responses to his outstanding third-party subpoenas for the production of

records under Federal Rule of Civil Procedure 45, which were pending with the Orlando Police Department, the Orange County Sheriff's Office, and the Office of the State Attorney for the Ninth Circuit. The district court upheld the magistrate judge's denial of Plaintiff's Rule 56(d) request, without addressing Plaintiff's request to obtain the responses to the outstanding subpoenas, and held that McFarlane's use of deadly force was objectively reasonable based upon the evidence presented in support of McFarlane's motion for summary judgment.

## D.

We hold that the district court abused its discretion by denying the Plaintiff any opportunity to conduct discovery in this case before being made to respond to McFarlane's motion for summary judgment.

First, Plaintiff stands on a decidedly different footing than the plaintiff in *Harbert*. In *Harbert*, we affirmed the district court's denial of a plaintiff's Rule 56(d) motion in a qualified immunity case because the specific facts the plaintiff claimed would be revealed by *further* discovery were unlikely to "establish either that defendants acted outside the scope of their discretionary authority or that they had violated clearly established law." *Harbert*, 157 F.3d at 1280. In other words, the plaintiff specified the facts that he intended to discover, but those facts were unlikely to defeat the defendant's entitlement to qualified immunity. In this case, however, Plaintiff does not dispute that McFarlane was acting within the scope of

his discretionary authority.  And McFarlane does not claim that he is entitled to qualified immunity because his conduct would not have violated clearly established law under "*plaintiff's* version of the facts."  *Lee*, 284 F.3d at 1194.  Rather, McFarlane claims that he is entitled to qualified immunity under *his* version of the facts, based upon evidence that is almost exclusively within his control, while simultaneously prohibiting Plaintiff from conducting *any* discovery that might test or contradict his version.

Second, Rule 56(d), by its terms, requires only that a non-moving party "show[] by affidavit or declaration that, for specified *reasons*, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d) (emphasis added).  Its very purpose "is to provide an additional safeguard against an improvident or premature grant of summary judgment and the rule generally has been applied to achieve that objective."  10B Charles Alan Wright et. al, *Federal Practice and Procedure* § 2740 (4th ed.) (footnote omitted); *see Celotex*, 477 U.S. at 326 (noting that "[a]ny potential problem with . . . premature motions [for summary judgment] can be adequately dealt with under Rule 56[(d)]. . . .").  Accordingly, we long ago recognized that "rule 56[(d)] is infused with a spirit of liberality."  *Wallace*, 703 F.3d at 527; *see also Reflectone*, 862 F.2d at 844 ("reaffirm[ing] that rule 56[(d)] is infused with a spirit of liberality"); *Walters v. City of Ocean Springs*, 626 F.2d 1317, 1321 (5th Cir. 1980) ("Unless dilatory or lacking in merit, [a Rule 56(d)] motion

should be liberally treated.") (internal quotation marks omitted); 10B Wright, *supra*, § 2740 ("Consistent with [its] purpose, courts have stated that the provision should be applied with a spirit of liberality.").

This case calls for such a liberal application. Plaintiff has explained, with as much specificity as he can, the informational disparity that renders him unable to adequately respond to the motion. Indeed, Plaintiff has offered what may well be the most recognized reason *why* a party should be given the shelter of Rule 56(d) from a pre-discovery motion for summary judgment: "[T]he key evidence lies in the control of the moving party." *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 484 (4th Cir. 2014); *see also Walters*, 626 F.2d at 1321 ("The parties' comparative access to the witnesses or material relevant to the disposition of the rule 56[(d)] motion is a particularly salient factor for the trial court to consider in exercising its discretion"). And this is especially true in a deadly force case, where "the witness most likely to contradict the officers' story—the person shot dead—is unable to testify." *Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (alteration omitted)*; cf. Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) (In deadly force cases, the district court "must carefully examine all the evidence in the record, such as medical reports, contemporaneous statements by the officer and the available physical evidence, as well as any expert testimony proffered by the plaintiff, to determine whether the officer's story is internally consistent and consistent with other known facts.").

Moreover, Plaintiff's request does not contain any of the usual failings that have led courts to deny Rule 56(d) motions.  There is nothing to suggest that Plaintiff's failure to conduct discovery was due to inactivity or delay.  *See Walters*, 626 F.2d at 1321 ("Unless dilatory or lacking in merit, [a Rule 56(d)] motion should be liberally treated.") (internal quotation marks omitted); *id.* at 1322 ("The most common situation in which rule 56[(d)] will not be applied to aid a nondiligent party arises when the nonmovant has complied with Rule 56[(d)] but has failed to make use of the various discovery mechanisms that are at his disposal or seeks a continuance of the motion for that purpose.") (internal quotation marks omitted); *see also Fla. Power & Light*, 893 F.2d at 1316 (upholding district court's denial of appellant's Rule 56(d) motion where "summary judgment was not granted until approximately two years after the complaint was filed," appellants "were provided with a list of individuals and documents with information relevant to the issues," and the "parties also agreed on a discovery schedule which the trial court extended on several occasions."); *Barfield v. Brierton*, 883 F.2d 923, 932 (11th Cir. 1989) (affirming denial of motion for additional discovery where the movant "had ample time and opportunity for discovery, yet failed to diligently pursue his options"); 10B Wright, *supra*, § 2740 (Rule 56(d) "will not be liberally applied to aid parties who have been lazy or dilatory.").  Here, Plaintiff was never allowed to conduct discovery

because the defendants moved to stay the case management conference and all discovery pending a ruling on the qualified immunity motions.

Nor is this a case in which the plaintiff failed to request discovery under Rule 56(d). In his response to McFarlane's pre-discovery motion for summary judgment, Plaintiff specifically requested an opportunity to conduct discovery under Rule 56(d) and filed a Declaration in support of his request, explaining why he has been hamstrung in his ability to challenge the officers' version of the facts and circumstances surrounding the shooting. *Cf. Reflectone*, 862 F.2d at 844 ("reaffirm[ing] that rule 56[(d)] is infused with a spirit of liberality," but declining to "go so far as to require courts to make such a motion on behalf of a party that deliberately chooses not to do so itself"); *Wallace*, 703 F.2d at 527 (upholding grant of pre-discovery summary judgment where the appellant did not file a Rule 56(d) motion, and relied instead on a motion to compel discovery and a motion to strike the opponent's supporting affidavit).

Plaintiff also explained in his Rule 56(d) request how, with the assistance of at least some targeted discovery and an expert, he might well be able to show a genuine dispute of material fact as to whether McFarlane's use of deadly force was objectively reasonable. *Cf. Harbert, Inc.*, 157 F.3d at 1280 (upholding denial of Rule 56(d) motion because the facts the plaintiff believed discovery would reveal were unlikely to "establish either that defendants acted outside the scope of their

discretionary authority or that they had violated clearly established law"). Plaintiff has made it clear that, based upon the information that he has been able to obtain thus far, he believes that Todashev was more likely fleeing the apartment, instead of charging towards the officers, and that Todashev was shot in the back while attempting to escape.

Finally, Plaintiff advised the district court he had outstanding third-party subpoenas for the production of additional records under Federal Rule of Civil Procedure 45, pending with the Orlando Police Department, the Orange County Sheriff's Office, and the Office of the State Attorney for the Ninth Circuit, and requested that the court at a minimum allow him to obtain these records before addressing the motion for summary judgment. *Cf. Fernandez v. Bankers Nat. Life Ins. Co.*, 906 F.2d 559, 570 (11th Cir. 1990) ("'Generally summary judgment is inappropriate when the party opposing the motion has been unable to obtain responses to his discovery requests.'") (quoting *Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988)).

For these reasons, we hold that Plaintiff's request to conduct discovery under Rule 56(d) and the accompanying declaration were sufficient to show why Plaintiff is currently unable to present facts essential to oppose Agent McFarlane's pre-discovery motion for summary judgment, and that the district court abused its

discretion in denying Plaintiff any opportunity to conduct discovery before being made to respond to McFarlane's version of the facts.

### E.

With regard to the district court's grant of summary judgment to McFarlane, we vacate the judgment as premature. We express no opinion on the district court's substantive ruling based upon the facts presented to it. Nor do we endorse Plaintiff's suggestion that he should be allowed full discovery before the district court reconsiders the qualified immunity issue. We leave the scope of the appropriate discovery to the discretion of the district court on remand. *See e.g. Stonecipher v. Valles*, 759 F.3d 1134, 1149 (10th Cir. 2014) (When a district court "cannot rule on the immunity defense without clarifying the relevant facts, the court may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim.") (internal quotation marks omitted).

### IV.

For the foregoing reasons, we affirm the district court's dismissal of all of the claims against the individual defendants, with the exception of the excessive force claim stated against McFarlane. We also affirm the district court's dismissal of the negligent supervision claim against the United States, and the district court's grant of summary judgment to the United States on the wrongful death claim.

We reverse the district court's denial of Plaintiff's request to conduct discovery under Rule 56(d) on the remaining claim for excessive force against McFarlane, vacate the district court's grant of summary judgment to McFarlane on that claim as premature, without prejudice to McFarlane's ability to refile the motion after Plaintiff has been afforded an adequate opportunity for discovery, and remand to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED.**

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

June 19, 2020

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  19-10245-CC
Case Style:  Estate of Ibragim Todashev v. USA
District Court Docket No:  6:17-cv-00919-CEM-GJK

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, each party to bear own costs.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Carol R. Lewis, CC at (404) 335-6179.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs